UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(NORFOLK DIVISION)

| | |
|---|---|
| SHOPNTOWN, LLC ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> LANDMARK MEDIA ENTERPRISES, LLC ) <br><br> Defendant. ) | Civil Action No.<br>2:08-cv-00564-RAJ-JEB<br><br><u>REDACTED FOR ELECTRONIC<br>FILING IN PUBLIC RECORD</u> |

**MEMORANDUM IN SUPPORT OF LANDMARK'S MOTION FOR SUMMARY JUDGMENT THAT ALL ASSERTED METHOD CLAIMS OF SHOPNTOWN'S U.S. PATENT NO. 6,968,513 ARE INVALID UNDER 35 U.S.C. § 101 FOR FAILING TO CLAIM PATENT-ELIGIBLE SUBJECT MATTER**

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................... 1

II.    THE UNDISPUTED FACTS RELEVANT TO THIS MOTION, I.E., THE
       LANGUAGE OF THE ASSERTED METHOD CLAIMS OF THE 513 PATENT .......... 3

III.   APPLICABLE LAW .................................................................................................. 6

       A.     The Now-Narrowed Scope of Patentable Subject Matter ........................................ 6

       B.     The General Legal Standard for Summary Judgment of Invalidity ........................ 9

IV.    THE ASSERTED METHOD CLAIMS COVER UNPATENTABLE SUBJECT
       MATTER AND ARE THEREFORE INVALID ............................................................ 10

       A.     The Asserted Method Claims Fail to Meet the "Machine" Prong of the
              *Bilski* MOT Test .................................................................................................. 11

       B.     The Asserted Method Claims also Fail to Meet the "Transformation"
              Prong of the *Bilski* MOT Test and Are, Therefore, Invalid .................................. 17

V.     CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................10

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
   304 Fed. Appx. 866, 2008 U.S. App. LEXIS 25661 (Fed. Cir. Dec. 19, 2008) ......................13

*Cybersource Corp. v. Retail Decisions, Inc.*,
   No. C04-03268, 2009 U.S. Dist. LEXIS 26056 (N.D. Cal. March 26 2009) ......................9, 13

*Dealertrack, Inc. v. Huber*,
   No. CV 06-2335, 2009 U.S. Dist. LEXIS 58125 (C.D. Cal. July 7, 2009) ................14, 16, 17

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ......................................................................................6, 7, 10

*E-Pass Techs. v. 3com Corp.*,
   No. C-00-2255, 2006 U.S. Dist. LEXIS 98257 (N.D. Cal. Nov. 21, 2006) ............................11

*eBay Inc. v. MercExhcange, LLC*,
   547 U.S. 388 (2006) ................................................................................................8

*Every Penny Counts, Inc. v. Bank of Am.*,
   No. 2:07-cv-042, 2009 U.S. Dist. LEXIS 53626 (M.D. Fla. May 27, 2009) ........................13

*Fort Properties, Inc. v. American Master Lease, LLC*,
   609 F. Supp. 2d 1052, 2009 U.S. Dist. LEXIS 7217 (C.D. Cal. Jan. 22, 2009) ...............13, 14

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ................................................................................................6

*Haulbrook v. Michelin N. Am., Inc.*,
   252 F.3d 696 (4th Cir. 2001) ..................................................................................10

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (*en banc*), *cert. granted*, 129 S. Ct. 2735
   (June 1, 2009) ............................................................................................. *passim*

*In re Comiskey*,
   554 F.3d 967 (Fed. Cir. 2009) ..................................................................................6

*In re Ferguson*,
   558 F.3d 1359 (Fed. Cir. 2009), *petition for cert. filed* (Jun. 2, 2009) ...................7,13, 15, 16

*In re Nuijten,*
    500 F.3d 1346 (Fed. Cir. 2007) ................................................................7

*Lab. Corp. of Am. v. Metabolite Labs.,*
    548 U.S. 124 (2006) ...............................................................................9

*Microsoft Corp. v. AT&T Corp.,*
    550 U.S. 437 (2007) .............................................................................15

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.,*
    946 F.2d 870 (Fed. Cir. 1991), *reh'g denied,* 1991 U.S. App. LEXIS 28619 (Fed. Cir. Dec. 3, 1991) ..........................................................................................9

*State Street Bank & Trust Co. v. Signature Financial Group, Inc.,*
    149 F.3d 1368 (Fed. Cir. 1998) ...................................................... *passim*

*Tronzo v. Biomet, Inc.,*
    950 F. Supp. 1149 (S.D. Fla. 1996), *aff'd in part, vacated in part, rev'd in part,* 156 F.3d 1154 (Fed. Cir. 1998) ..................................................................9

*Zenith Elecs. Corp. v. Exzec, Inc.,*
    182 F.3d 1340 (Fed. Cir. 1999) .............................................................19

## BOARD OF PATENT APPEALS AND INTERFERENCES

*Ex parte Cornea-Hasegan,*
    89 U.S.P.Q.2d 1557 (Bd. Pat. App. & Int. 2009) .................................12

*Ex parte Halligan,*
    89 U.S.P.Q.2d 1355 (Bd. Pat. App. & Int. 2008) .................................12

*Ex parte Langemyr,*
    89 U.S.P.Q.2d 1988 (Bd. Pat. App. & Int. 2008) .................................12

*Ex parte Wasynczuk,*
    87 U.S.P.Q.2d 1826 (Bd. Pat. App. & Int. 2008) .................................12

## FEDERAL STATUTES

35 U.S.C. § 101 ...............................................................................................2

35 U.S.C. § 282 ...............................................................................................9

# EXHIBIT LIST

| Exhibit A | Post by Walter A. Rinebold to biz.marketplace.investors, Defendant's Deposition Exhibit 22 |
|-----------|---------------------------------------------------------------------------------------------|
| **Exhibit B** | Walter A. Rinebold Deposition Exhibit 15, GPC000172-175 |
| **Exhibit C** | Language of Method Claims with Court's Claim Constructions and Parties' Stipulated Constructions |
| **Exhibit D** | REDACTED |
| **Exhibit E** | Excerpt of Rule 30(b)(6) Deposition of Terrence Slattery, dated July 21, 2009 |
| **Exhibit F** | Excerpt of Personal Deposition of Terrence Slattery, dated July 21, 2009 |

Defendant Landmark Media Enterprises, LLC ("Landmark") moves for summary judgment that the asserted method claims of U.S. Patent No. 6,968,513 – namely claims 40-42, 44, 47, 48 and 50-52[1] – are invalid under 35 U.S.C. § 101. These claims are directed to subject matter that is no longer recognized as patentable after *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*), *cert. granted*, 129 S. Ct. 2735 (June 1, 2009). Since the question of patent eligibility under 35 U.S.C. § 101 is purely a question of law involving no fact questions, it is particularly amenable to summary adjudication, especially now that the Court has ruled on claim construction. Landmark is entitled to judgment as a matter of law on this question.[2]

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

The patent in suit is U.S. Patent 6,968,513 ("the 513 patent"; copy filed as D.I. 32 Ex. A). The patent application leading to the 513 patent was filed ten years ago in March, 1999, during the heyday of so-called "business method" patents, and the patent issued on November 22, 2005, while the United States Patent Office ("PTO") was routinely granting patents on methods of carrying out business transactions and functions.

In 1998, a seminal Federal Circuit decision had established the patentability of business methods. *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998). That decision, however, "launched a legal tsunami, inundating the patent office with applications seeking protection for common business practices." *Bilski*, 545 F.3d at 1004 (J. Mayer dissenting).[3]

---

[1] On July 29, 2009, plaintiff ShopNTown, LLC withdrew asserted claim 43.

[2] Although the Supreme Court recently granted certiorari on a petition from the Federal Circuit's *en banc* ruling, the Court's decision will likely not issue until many months after this case goes to trial, currently scheduled for September 29, 2009.

[3] Judge Mayer dissented from the decision because he did not think that the court went far enough in reining in business method patents.

The applicants for the 513 patent rode the wave of this tsunami, filing their application less than a year after *State Street* issued. As one of the ShopNTown inventors stated in a 1999 Internet post: "Just over a year ago, you would have had a very, very slim chance of getting an idea or method for a business patented. The start up company, linked below [www.shopntown.com], has filed for this type of patent and [is] presently seeking capitalization" (Exhibit A). Later, however, when the inventors' company, plaintiff ShopNTown, LLC ("ST"), failed to gain any traction and they ran out of money, they changed their business model and began trolling for targets to sue using their patent with the assistance of a financial backer, General Patent Corporation[4] (*see* Exhibit B). Landmark was the first target.

A sea change, however, occurred in October, 2008, with the *en banc* ruling in *Bilski*. There, the Federal Circuit reconsidered its earlier decisions as to the patentability of business methods and significantly narrowed the scope of such methods' eligibility for patent protection under 35 U.S.C. § 101 ("Section 101").[5] There is no question that many of the patents issued before *Bilski* would not have issued had they been prosecuted under the new *Bilski* standard.

---

[4]   General Patent Corporation ("GPC") is a "patent enforcement" company. As its website (www.generalpatent.com) prominently proclaims: "[General Patent] specializes… in helping cash-strapped independent inventors pursue their patent claims against the big guys." Judge Mayer aptly described what ST and GPC are doing in this case – using the "fallout from State Street," namely the issuance of "poor quality" patents resulting from an over-burdened PTO, in a "gold-rush mentality" toward litigation. As GPC's website unabashedly states: "We are your champion in this venture.... By filing a patent enforcement lawsuit, we gain leverage, and we then use that leverage to produce the best outcome for you, the client. We can often negotiate a licensing agreement under which you receive an ongoing royalty for the use of your patent" (http://www.generalpatent.com/patent-enforcement).

[5] Section 101 states:
   Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Consequently, there is also no question that many of the patents that issued before *Bilski* are now invalid. The 513 patent is one of those now-invalid patents.

The asserted method claims of the 513 patent cover nothing more than a business model for bringing buyers and sellers of products together through a website – precisely the kind of purely transactional business that *Bilski* held to be ***not*** patentable. By ST's own characterization (*see* Section II, *infra*), the 513 patent covers nothing more than the acts of: (i) enabling merchants to post listings to a website according to geographical area and topical category; (ii) charging merchants for the listings; and (iii) enabling consumers to access the website to view the merchant postings. Because the asserted claims are nothing more than a plan for using the Internet to place ads of localized interest on the Internet – simply carrying out business over the Internet – they do not satisfy the *Bilski* standard for patentable subject matter.

## II.  THE UNDISPUTED FACTS RELEVANT TO THIS MOTION, I.E., THE LANGUAGE OF THE ASSERTED METHOD CLAIMS OF THE 513 PATENT

For purposes of this motion alone and without waiving objections, Landmark relies on ST's own characterization of the 513 patent's "invention" and adopts the Court's claim construction ruling (D.I. 90).

Subject to the foregoing, Landmark states that the following are the undisputed material facts relevant to this motion.

**Undisputed Material Fact 1:**

According to ST, the "invention" is directed to:

methods that organize Internet information from merchants into geographical and topical categories and allows consumers to search for, and view, such information by selecting the geography and topical category they want. Organizing the information this way allows businesses to better target their customers and allows customers to find certain goods or services for sale within a geographic location.

(ST's Claim Construction Brief, D.I. 43, at 3.)

**Undisputed Material Fact 2:**

ST describes how the "invention" allows customers to locate merchants:

Users…initially select a geographic area. Once they do so, they are directed toward a second web page that is specific for the selected geographic area, and which contains information of goods and services offered for sale in that geographic area. The second web page may links [sic] to still other web pages containing information posted by the merchants.

(*Id.*)

**Undisputed Material Fact 3:**

ST describes how merchants can post listings using "the invention":

[M]erchants can, if they choose, post information to the website themselves. Finally, merchants are charged based on the information that they put into the website.

(*Id.* at 4.)

**Undisputed Material Fact 4:**

ST thus contends that it invented the very *ideas* of placing advertisements "largely" without human interaction, organizing choices by geographic areas, and grouping items by common characteristics. (ST's Claim Construction Brief, D.I. 43, at 3-4; *see* Undisputed Material Facts 1-3.)

**Undisputed Material Fact 5:**

The language of the asserted method claims of the 513 patent is set forth in a chart attached as Exhibit C. (*See also* D.I. 32 Ex. A and D.I. 90).

**Undisputed Material Fact 6:**

The Court's construction of the disputed claim terms and the parties' stipulated constructions is set forth in a chart attached as Exhibit C. (*See also* D.I. 90). For purposes of this motion alone, Landmark accepts these constructions.

**Undisputed Material Fact 7:**

The asserted method claims of the 513 patent recite the supposedly novel acts by which merchants and consumers find each other on the Internet through a website host. (D.I. 32 Ex. A; Exhibit C.).

**Undisputed Material Fact 8:**

Independent claim 40 begins by reciting "A *method for providing* an on-line interactive website," and then purports to state how that method is carried out. Paraphrased, the claim recites:

"providing" web pages containing categorical information arranged in a certain manner, by geographical areas;

"providing means" by which merchants can connect "to the web pages";

"allowing" merchants to select geographical areas and topical categories;

"allowing" merchants to post listings by geographical area and topical categories;

"connecting" consumers to the web pages;

"allowing" consumers to select geographical areas and topical categories;

"displaying" merchant information to the consumers;

"monitoring" and "providing" statistics about the consumer activity; and,

"generating revenue" based on the merchant postings.

(D.I. 32 Ex. A; Exhibit C.)

**Undisputed Material Fact 9:**

The other asserted method claims, which all depend from claim 40, recite acts such as "calculating fees" (claim 41), "providing" services (claim 42) and "prompting" for a password (claim 44). Other asserted dependent claims recite the use of menus and business listings. (D.I. 32 Ex. A; Exhibit C.)

In essence, the method of the 513 patent is akin to using a directory of local stores – an on-line Yellow Pages – and selecting from that directory the listing of the specific kind of store –

5

hardware, produce, bicycle – in the locality that one wants.[6]  The only difference is that it is done

on the internet.  Under *Bilski*, that difference is not a patent-eligible one.

## III.  APPLICABLE LAW

### A.  The Now-Narrowed Scope of Patentable Subject Matter

Section 101 forms a threshold test for patentability.  If patent claims fail the test of

Section 101, then they are unpatentable *per se* and there is no need to consider the other

requirements of patentability, such as the tests of anticipation and non-obviousness.[7]  *In re*

*Comiskey*, 554 F.3d 967, 973 (Fed. Cir. 2009).

At the same time, the relaxed tests of Section 101 patentability employed by the PTO

before *Bilski*, such as at the time when the application for the 513 patent was examined, are gone.

Under those now-repudiated tests, to be patentable a business method need only lead to a

"useful, concrete and tangible result" or relate to the "technological arts."  As the *Bilski* court

noted, however, both of these tests, at least as they were being applied by the PTO, were

inconsistent with Supreme Court precedent, most notably *Diamond v. Diehr*, 450 U.S. 175

(1981) and *Gottschalk v. Benson*, 409 U.S. 63 (1972).  After completing a review of both its own

precedent and that of the Supreme Court, the Federal Circuit made a change to the patent-

eligibility law, concluding that for a method claim (business or otherwise) to qualify as patent-

eligible subject matter, it must either: (i) be tied to a *particular* machine or apparatus; or (ii)

---

[6] These ideas as ST implements them, however, are no more inventive or worthy of patent
protection than pumping one's own gas, picking one's home by first looking at available
properties in the city or region where one wants to live, or not going to the hardware section of
Wal-Mart when you are looking for apples.

[7] However, Landmark's motion for summary judgment of invalidity, based on anticipation and
obviousness by the prior art, is forthcoming.  Landmark will demonstrate that the business
"system" and "method" claimed in the 513 patent was being used by Landmark and its current
entities, and others, long before the 513 patent application was filed, but that the patent office
was not told, and did not know, about this activity.

transform a particular article or thing into a different state or thing. *Bilski*, 545 F.3d at 954. This test has become known as the "machine-or-transformation test" ("MOT test").

Although the Federal Circuit in *Bilski* did not elaborate on the machine prong of the MOT test, since Mr. Bilski himself did not contend that his claims were patentable on the basis of that prong, the Court did, however, provide some guidelines for its application. The machine prong (as well as the second, transformation prong) requires, as a condition of patentability, that the machine in question "impose meaningful limits on the claim's scope." *Id.* at 961. The machine prong also requires that "the involvement of the machine . . . in the claimed process must not merely be insignificant extra-solution activity." *Id.* at 962.

On at least one occasion, the Federal Circuit has reiterated its definition of a machine within the MOT test as:

> a concrete thing, consisting of parts, or of certain devices and combination of devices. This includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result.

*In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009), *petition for cert. filed* (Jun. 2, 2009) (No. 08-1501), citing *In re Nuijten*, 500 F.3d 1346, 1355 (Fed. Cir. 2007) (internal quotations omitted).

As to the second prong – the "transformation" test – the *Bilski* court drew a distinction between process claims that, in fact, transform an article to a different state or thing (*e.g.*, the process in *Diamond*, which claimed use of a particular algorithm for a process that transformed uncured rubber into molded, cured rubber) and those that do not (*e.g.*, the process in *Bilski* directed to carrying out business transactions). The Federal Circuit noted that it is *not* sufficient that a process claim simply recite a "physical step" – such as the step of providing a machine to carry out some act. Instead, the machine of the claim must also transform an article or thing into

a different state. "This transformation must be central to the purpose of the claimed process." *Bilski*, 545 F.3d at 962.

As shown below, the claims in *Bilski*, like the claims here, on their face seemed to recite a physical step that was, in reality, not transformative of anything and not central to the underlying process.

Following its newly-elucidated analysis, the Federal Circuit found Bilski's claims invalid:

> Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances.

*Id.* at 963. As Judge Mayer more pointedly stated in his dissent (dissenting only because he felt that the decision did not go far enough to rein in business method patents): "The patent system is intended to protect and promote advances in science and technology, not ideas about how to structure commercial transactions." *Id.* at 998.

No more are business method patents to be so easily granted or upheld.

Judge Patel of the Northern District of California has aptly described the impact of *Bilski* on business method patents:

> In analyzing *Bilski*, one is led to ponder whether the end has arrived for business method patents, whose numbers swelled following the decision in *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed.Cir.1998). Without expressly overruling *State Street*, the *Bilski* majority struck down its underpinnings. This caused one dissenter, Judge Newman, to write that *State Street* "is left hanging," while another dissenter, Judge Meyer [*sic*], registered "an emphatic 'yes'" to rejecting *State Street*, and a third, Judge Rader, queried whether the court was willing to decide that the entire field of business patents is "undeserving of incentives for invention." 545 F.3d at 995, 998, 1014. Although the majority declined to say so explicitly, *Bilski*'s holding suggests a perilous future for most business method patents.
>
> The observations of several Justices suggest that this issue may be expected to receive serious consideration by the Supreme Court. See *eBay Inc. v.*

*MercExhcange, LLC*, 547 U.S. 388, 397 (2006) (Kennedy, J., concurring) (noting the "potential vagueness" and "suspect validity" of some business method patents); *Lab. Corp. of Am. v. Metabolite Labs.*, 548 U.S. 124, 127 (2006) (Breyer, J., dissenting from denial of certiorari) (questioning *State Street's* adherence to Supreme Court precedent and observing, "Patent law seeks to avoid the dangers of overprotection just as surely as it seeks to avoid the diminished incentive to invent that underprotection can threaten. One way in which patent law seeks to sail between these opposing and risky shoals is through rules that bring certain types of invention and discovery within the scope of patentability while excluding others."). The closing bell may be ringing for business method patents, and their patentees may find they have become bagholders.

*Cybersource Corp. v. Retail Decisions, Inc.*, No. C04-03268, 2009 U.S. Dist. LEXIS 26056, at *32-34 (N.D. Cal. March 26 2009) (footnotes omitted) (granting summary judgment of invalidity for lack of patentable subject matter under section 101 on basis of patentee's claim construction position).[8]

Indeed, as will be discussed in more detail below, the *Bilski* decision has prompted numerous district courts beyond Judge Patel in *Cybersource* to invalidate patents for failing to meet the Section 101 test.

### B.  The General Legal Standard for Summary Judgment of Invalidity

While a presumption of validity is accorded U.S. patents under 35 U.S.C. § 282, and the PTO is entitled to deference in its determination that an application should issue into a patent, that deference is contingent on the PTO's having applied *correct* principles of law. *Tronzo v. Biomet, Inc.*, 950 F. Supp. 1149, 1154 (S.D. Fla. 1996), *aff'd in part, vacated in part, rev'd in part*, 156 F.3d 1154 (Fed. Cir. 1998). So it is the federal courts who are the final arbiters of patent validity. *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991), *reh'g denied*, 1991 U.S. App. LEXIS 28619 (Fed. Cir. Dec. 3, 1991).

---

[8]  The quoted excerpts from the Justices indicate the problems that the Supreme Court sees with business method patents such as that asserted by ST in this case. As suggested by Justices Kennedy and Breyer, the Court may extend *Bilski* even further, entirely eliminating as a class all patents of a kind such as ST's patent.

Summary judgment of invalidity is appropriate where the standards of Rule 56(c) are met: the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-255 (1986); *Haulbrook v. Michelin N. Am., Inc.,* 252 F.3d 696, 702 (4th Cir. 2001).

Here, there are no issues of fact at all. The Court has already construed the relevant claims (D.I. 90, filed July 22, 2009),[9] and the overall issue of whether or not the patent claims, as so construed, meet the test for subject-matter patentability under Section 101 is a pure question of law. *Bilski,* 545 F.3d at 950-951. The claims do not meet that test, and Landmark is entitled to judgment as a matter of law.

## IV. THE ASSERTED METHOD CLAIMS COVER UNPATENTABLE SUBJECT MATTER AND ARE THEREFORE INVALID

The 513 patent was issued by the PTO under lax legal guidelines that the Federal Circuit has now discredited. Application of the current, correct legal principles leads to invalidity of the asserted method claims. Like the subject matter found unpatentable in *Bilski,* the claimed methods of the 513 patent merely take information that has been input by merchants and make it available to consumers. Nothing is transformed. The claimed methods thus fail the "transformation" prong of the test. Nor do the claims recite or implement a particular machine (such as a computer programmed with a *specified* algorithm of a *particular* purpose, or some mechanically acting device, such as a calendaring machine for making rubber sheets, as in *Diamond v. Diehr*), and, therefore, the "machine" prong of the test is also not met.

---

[9] A chart of the relevant claims (with those terms construed in the July 22 claim construction order in bold) and their corresponding constructions is attached as Exhibit C.

## A. The Asserted Method Claims Fail to Meet the "Machine" Prong of the *Bilski* MOT Test

The method claims recite how merchant information is organized, who can submit it, and how the website can be used to generate revenue. However, for all of the recited features, the claims still fail the MOT test because, at bottom, they are directed to nothing more than a business model or plan that takes advantage of the Internet. The method claims do not recite a machine, they do not implement a machine, and they are not tied to a particular machine. Nor is any physical article or thing changed or transformed.

As ST interprets them, independent claim 40 and its respective dependent claims are directed to the process by which merchants and customers do business. The claims are method claims directed to a "method of providing an on-line interactive website" (*see* claim 40). Websites themselves, such as the accused ForRent.com website, are not claimed; only the method of "providing" them is (making them available for use over the Internet). Notably, even if ST's patent claims did cover websites in some manner, the claims still would not be patentable because a website *per se* is *not* a machine, much less a particular kind of machine. A website is merely an intangible presence on the Internet that is displayed or hosted on the Internet – i.e., made available for viewing over the Internet – by a machine such as a web server. *E-Pass Techs. v. 3com Corp.*, No. C-00-2255, 2006 U.S. Dist. LEXIS 98257, at *42 (N.D. Cal. Nov. 21, 2006) (characterizing a website as an "intangible" data source).

Moreover, even though the Court has interpreted certain means-plus-function aspects of the claims to refer to structure including a web server (*see* D.I. 90 at 13-17), they still do *not* meet the *Bilski* standards. The recitation of a web server provides no patentability because it is not a particular machine and *the claimed method steps are not tied to it*. While ST may argue that the web server is "provided" to the method as a way for merchants to access web pages,

even if a web server is part of the claims in that manner, it is simply a general purpose web server associated with the Internet. It is insignificant to the underlying claimed method, which again is simply a person-to-person business plan by which local merchants list themselves and their products, and local consumers find them. None of the claim's various steps is tied to the "means" clause that introduces the server. At best, it is the subject of a passing reference in the claims that cannot meet *Bilski's* patentability requirement of "*tied* to a particular machine."

In this regard, the method claims here are similar to claims sought in numerous patent applications that have been **rejected** by the PTO's Board of Patent Appeals & Interferences during the last two years for failure to satisfy the MOT test of Section 101. For example (with emphasis added):

- *Ex parte Langemyr*, 89 U.S.P.Q.2d 1988, 1996 (Bd. Pat. App. & Int. 2008) ("nominal recitation in the preamble citing a 'method executed *in a computer apparatus*'" was "so generic as to encompass any computing system");

- *Ex parte Wasynczuk*, 87 U.S.P.Q.2d 1826, 1835 (Bd. Pat. App. & Int. 2008) (rejecting claims reciting a "*computer-implemented*" system because the claimed computer was "essentially any conventional apparatus that performs the claimed functions" and thus not a "particular" machine);

- *Ex parte Cornea-Hasegan*, 89 U.S.P.Q.2d 1557 (Bd. Pat. App. & Int. 2009) (rejecting a method claim where each and every step is explicitly performed by *a computer processor*); and

- *Ex parte Halligan*, 89 U.S.P.Q.2d 1355, 1365 (Bd. Pat. App. & Int. 2008) (rejecting a method under the *Bilski* MOT test because the "*programmed computer*" that was recited to perform the method was "nothing more than a general purpose computer, even though the claim recited several "means" functions for the computer: "means . . . for providing . . . criteria;" "means . . . for receiving;" "means . . . for calculating;" and "means . . . for ranking."[10]

---

[10] In fact, our recent survey revealed 58 post-*Bilski* decisions from the PTO Board of Patent Appeals and Interferences rejecting claims under section 101 for failure to satisfy the *Bilski* test.

District courts faced with business method claims since *Bilski* have likewise not been shy about invalidating them.[11] For example, in *Cybersource* (cited above), the District Court for the Northern District of California granted summary judgment of unpatentability against computerized process claims directed to fraud protection for Internet credit-card transactions for failing the *Bilski* test. The court was not persuaded that the claims' recitation of the use of "the Internet," or recitation of "information" that might be indicative of a credit card, made the claims sufficiently physical or otherwise within the MOT test. *Cybersource*, 2009 U.S. Dist. LEXIS 26056, at *9-14.

In *Every Penny Counts, Inc. v. Bank of Am.*, No. 2:07-cv-042, 2009 U.S. Dist. LEXIS 53626, at *2-8 (M.D. Fla. May 27, 2009), the district court relied on *Bilski* to hold invalid even "system" claims, when the "system" was directed to a "network" having various "means" (e.g., "entry means," "identification entering means," and "computing means") for carrying out a business transaction.[12] Although the patentee argued that, since the claims repeatedly recited "means for" carrying out certain functions, this satisfied the MOT test by tying the method to particular machines, the court rejected that argument and invalidated the claims. *Id.* at *6-8.

---

[11] Since *Bilski*, the Federal Circuit itself has used the MOT test to affirm district court decisions invalidating claims under Section 101. *See, e.g.,* the *Ferguson* case discussed herein, and *Classen Immunotherapies, Inc. v. Biogen IDEC*, 304 Fed. Appx. 866, 867, 2008 U.S. App. LEXIS 25661 (Fed. Cir. Dec. 19, 2008) (affirming a pre-*Bilski* district court conclusion of invalidity based on post-*Bilksi* considerations).

[12] In relevant part, the specific claim in issue recites the following "system", "network" and "means" that the court held not to be sufficient structure for section 101 (emphasis added):
> A *system*, comprising:
> a *network*;
> *entry means* coupled to said *network*...;
> *identification entering means* in said *entry means* and coupled to said *network*...;
> said *network* including *computing means*...;
> said *computing means* in said *network*...; and
> said *computing means* in said *network*....

*Id.* at *3.

In *Fort Properties, Inc. v. American Master Lease, LLC*, 609 F. Supp. 2d 1052, 2009 U.S. Dist. LEXIS 7217, at *2-3 (C.D. Cal. Jan. 22, 2009), the patent claims recited acts of "acquiring real estate property," "aggregating the property," and "selling the property," among other things. Relying on *Bilski*, the Court found the claims invalid under Section 101. *Id.* at *12. The fact that the property was physical was irrelevant; like here, even if the merchant information of the 513 patent were physical – which it decidedly is not – it is no more transformed in the ST method than was the property in *Fort Properties*.

Just this month, a patent claiming a method for automating a credit application process was also found not to contain patentable subject matter in light of *Bilski*. *Dealertrack, Inc. v. Huber*, No. CV 06-2335, 2009 U.S. Dist. LEXIS 58125, at *13 (C.D. Cal. July 7, 2009). The invention there involved a system with features including a graphical user interface, automatic lender-to-lender application routing, and third-party data entry features. *Id.* at *4. It was undisputed that the *Dealertrack* patent claims did not meet the "transformation" prong of the MOT test, so the only issue before the court was whether or not the "machine or apparatus" prong was satisfied. *Id.* at *8. The court noted that two important considerations when making such an analysis are that "the use of a specific machine . . . must impose meaningful limits on the claim's scope to impart patent eligibility" and that the "involvement of the machine . . . must not merely be insignificant extra-solution activity." *Id. (quoting Bilski*, 545 F.3d at 961-962).

The court concluded that the central processor, which comprised specially-programmed computer hardware and a database, did ***not*** constitute a "particular machine" since it was nothing more than a general purpose computer programmed in an unspecified manner. *Id.* at *11-12. According to the court, nowhere in the patent specification was there any evidence regarding

how the central processor was specially programmed so that it could be considered a "particular machine" rather than a general processing computer. *Id*. at 12.

Summarizing this quickly-developing body of post-*Bilski* caselaw, it is simply *not* enough for patentability that a claim recite general purpose machinery – machinery like "a computer apparatus," "a computer-implemented system," "a computer processor," "a programmed computer," "the Internet," "a network," "computing means," "entry means," a "web server" – if there is no discussion as to how such general machinery was specially programmed or otherwise adapted for use in the *particular* process of the alleged invention. Because the method claims of the 513 patent (under this Court's construction) cover nothing more than a business method that is not even tied to a computer, they fail the first prong of the MOT test.

Nor are the asserted claims tied to any other particular machine, or for that matter, anything physical at all. Only non-physical features of the website are referenced, *e.g.*, "pages containing information organized into a hierarchy of geographical areas." But, as the claim notes, the pages are merely data that contain "information" inputted by the merchants. The data is *not* physical, and does *not* represent anything physical; it therefore cannot be "transformed" – and is not "transformed" – in the ST method within the meaning of the MOT test. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 449 (2007) ("Abstract software code is an idea without physical embodiment...."). The data inputted by the merchants, and the web pages that display this information, are representations of only the merchant, but nothing else. Merchants are not "physical;" nor are they "machines" under the MOT test.

This is demonstrated by the *Ferguson* case, in which the claim was directed to a hierarchy of marketing companies, in which a lead company markets software from a plurality of autonomous independent software companies, and carries out general marketing operations for

the benefit of the underlying autonomous companies. *Ferguson*, 558 F.3d at 1361. The Court rejected applicants' contention that the lead marketing company was "a physical thing, and as such analogous to a machine," holding instead that the company did *not* meet its test for a machine: "a concrete thing, consisting of parts, or of certain devices and combination of devices." *Id.* at 1366. The Court concluded "[t]o the contrary, Applicants do no more than provide an abstract idea – a business model for an intangible marketing company." *Id.*

Here, too, the merchant or collection of merchants who might input information are not "machines" within the Federal Circuit's definition. The 513 patent is simply a business model that takes advantage of the Internet, applies it to the well-known concept of a directory (such as the Yellow Pages), and makes only passing reference to a web server. That is no more patentable under Section 101 than would be a claim directed to a method of delivering pizzas by driving them by car to the caller's destination. The facts that the car is a machine and that the car and the roads over which it travels are physical are merely incidental to the method, just like the Internet and non-particularized web server of the 513 patent are the incidental platform over which the 513 patent's business model is overlaid. There is nothing patentable about that under Section 101.

And any reliance by ST on the the claims' recitation of a web server would be misplaced under the law. A web server that is connected to the Internet is nothing more than a general processing computer that facilitates communication to a database containing electronic information that can be displayed (on a merchant's or consumer's PC) as a series of web pages. Thus, a server is no more a machine than the "specially programmed computer hardware and database" described in *Dealtrack*. The web server in ST's claim 40, which the Court has

concluded is implicated by the various "means" recited in the claims, is in no way specifically programmed in a manner that imparts patent eligibility.

Just like the central processor at issue in *Dealertrack*, the 513 patent nowhere addresses how a server that is connected to the Internet is anything more than "a general purpose computer that has been programmed in some unspecified manner." *Dealertrack*, 2009 U.S. Dist. LEXIS 58125, at *12. Just as the patent in *Dealertrack* did little more than allow credit applications to be processed on a computer, the 513 patent does little more than allow a merchant's listing of a classified section of a phone book to be inputted by the merchant through the internet and viewed by a consumer through an interactive website on the Internet. The only "machines" that the 513 patent could be tied to are the Internet itself or a web server. Neither of these meets the stringent requirements of the machine prong of the MOT test as stated by the Federal Circuit in *Bilski*.

Finally, the features added by the claims dependent on claim 40 (i.e., asserted claims 41-42, 44, 47, 48, and 50-52) do not add anything that would make those claims patentable. They do not identify the recited website as a particular machine nor refer back to the website recited in the preamble or the "means for connecting" (ST's web server) clause.

### B. The Asserted Method Claims also Fail to Meet the "Transformation" Prong of the *Bilski* MOT Test and Are, Therefore, Invalid

Moreover, even if the merchant information could be characterized as physical, patentability under the *Bilski* test requires more than simple physicality; it requires a "transformation [of a physical thing] from one state to another." There is no transformation of any of the "information" from one state or thing to another in the method of the claim. Merchants post it. Consumers obtain and read it. Nothing else happens to it.[13]

---

[13] Staying with the delivery analogy, the fact that the pizzas are physical is itself meaningless. Like the inputted merchant information here, the pizzas are not transformed. (Getting cold during delivery and getting eaten (anyway) do not count.)

In sum, the asserted claims fail both prongs of the machine-or-transformation test, and the subject matter that they purport to cover is not eligible for patent protection.

Even ST acknowledges that the claims are directed to a business transaction – merchants posting listings, customers accessing listings, merchants receiving exposure, someone keeping tabs of the activity, and someone collecting money. They are directed to the very *ideas* of placing advertisements "with minimal, if any, human interaction"; organizing the information by geographic areas and making it available to consumers in such organized manner; and organizing goods or services by common characteristics and making the information about them available to consumers in such organized manner.

As Gertrude Stein once said, "there's no there there." There's no patentable machine or transformation there in ST's method claims. There's no advancement or promotion of "science or the technological arts" as required by Section 101. *Bilski*, 545 F.3d at 998 (Mayer, dissenting from majority opinion's failure to rein in business method patents even further.)

The very real danger of patentability of business methods, as alluded to by *Bilski*, is that they can be used as tools of extortion, with vague claims stretched to cover far more than whatever contribution the patent makes to the advancement of science or the technological arts.

This case provides the perfect example of such abuse. **REDACTED**

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████ ST's view of the coverage of its patent – which is nothing more than a "substantially automated" yellow pages – is both

absurd and a legal impossibility, yet it is evidence of the mischief to which vague claims, such as these business method claims, can be put.[14]

Here, the primary example of the problem is the consistently changing claim constructions advanced by ST as it tries, desperately, to both avoid the prior art asserted by Landmark and to cover the significant operations of ForRent.com that are conducted *entirely* by humans employed by Landmark. (See, in general, Landmark's memorandum on its construction of the "means for" elements of claim 21 (D.I. 91), at 1-6.). ST told the Court at the *Markman* hearing that the invention here resided in substantially automating the ability of merchants to input information for on-line listings in a website of geographic hierarchy (See Tr. July 13, 2009, at 45-46). ST argued that "substantially automated" in the claims means "a process that takes place largely without human intervention, but the Court construed the term to mean "a process that takes place with minimal, if any, human intervention." (*Markman* Order, D.I. 90, at 10-12). Despite this, ST continues to assert these claims against ForRent.com's subscription service operations – as opposed to the place-an-ad feature – which account for more than 97% of its revenue and which are performed entirely by humans.

The subscription service of ForRent.com is directed to owners and managers of large apartment communities, having more than 20 and generally more than 100 rental units within the community. Such owners/managers (merchants) cannot themselves place the original listing of their communities on-line at all, but rather must provide information to one of the 350 national sales representatives that Landmark employs to support these subscription service customers. Moreover, when such subscription customers change information in their listings, they do **not** do

---

[14] The Federal Circuit has been clear that a patentee's marketplace pronouncement that its patent is not susceptible to design around is inherently suspect. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).

it through the website but rather go through their assigned Landmark representative, who designs and makes the change for the merchant not only on the ForRent.com website but also on its associated print magazine. The deposition testimony of Landmark's Terry Slattery, who has been President of ForRent Media Solutions for three years and who has been in the apartment-listing business with ForRent and its predecessor since 1992, explains why ST's business method patent does not cover ForRent's business:

Q. Now, let's talk about the communities that are 100 units or -- or greater. If -- if a new community of 100 units or greater wanted to initiate listings with ForRent.com, could that community initiate listings through the Web site?

A. Could they set themselves up through the Web site?

Q. Yes.

A. I don't think physically they -- I don't think physically they could. They could go to place an ad, but I don't think it would -- I don't know the answer to that. It -- it doesn't happen that way, and the reason it doesn't happen that way, and -- and I'm stumped by the question is, when you're building an apartment community of a hundred units of greater, we know about it. It's not a small house that's built. There is a permit pulled. We -- we know all the permits that are pulled for the multi-family space. We know it -- it takes, you know, a year to build a property. It's not built overnight so we know exactly every stage of the process and. We're out on the site talking to the management company prior to the building being built, so if we have to wait until the building is built and they find us on our web site we've done a very poor job with our 350 sales folks. So to answer your question, I don't know if it could happen. I would certainly hope it never had happened because we haven't missed that opportunity.

Q. So how would this hundred unit community generate a listing on ForRent.com?

A. An account executive would go to the management company and/or site, sit down with the      manager, talk about their various advertising needs, which are usually vast when you're building a brand new building, and we would hopefully sell them a package of -- of Internet print and anything else we have, and the account executive would then build the ad and build the package for them and put them on-line, and sometimes that will include having to go out and take photographs of the building, which we do. We would include video in the building if they choose

a video package, which we do, connecting all the phone lines, which we do, manually.

Q. And once that listing is up, if this -- if this same 100-unit community wants to make a change, how does that happen?

MR. STERN: Objection.

THE WITNESS: The majority of the changes as we discussed, are done in the books. They have to be done through graphic service. All things in the book have to be done

through a graphic service order. The account executives in For Rent Media Solutions, 350 people plus our customer service reps, are tasked with seeing their apartment communities, their -- their customer base, on a monthly basis, physically going to the asset, sitting down with the manager, with the local person, and talking about their program, sharing results for that month, getting any changes that they need and hopefully up --selling them some more advertising if the need is -- becomes apparent, and then they go back to the office and they make the ad changes and they make the on-line changes through our administrative and customer service people or by themselves, depending on the size of the market.

Q.    When you say by themselves, you mean by themselves meaning a -- a ForRent.com employee?

A.    Right, by -- the account executive is what I meant. By themselves they can make the changes as well.

Rule 30(b)(6) Deposition of Terrence Slattery (President, For Rent Media Solutions), dated July 21, 2009, at 119-122 (Exhibit E). See also, personal Deposition of Terrence Slattery, dated July 21, 2009, at 98, 115-116 (Exhibit F).

There is nothing about this operation that remotely fits even ST's own characterization of its purported invention as being "largely without human intervention," let alone this Court's interpretation of the "substantially automated" limitation as being "with minimal, if any, human intervention." With respect to the original input or changing of merchant listings, Landmark's operation is entirely manual; "human intervention" is complete and pervasive. Yet Landmark is forced, at great expense and burden, to defend this vastly different business against a patent that, today, would not have issued in the first place and whose claims are now being stretched beyond any semblance of the patentee's own characterization of it and well beyond its purported contribution to the technical arts.

## V.    CONCLUSION

Because the question of whether or not the asserted method claims recite patent-eligible subject matter relates to the language of the asserted claims, which is not in dispute for purposes of this motion, there are no genuine issues of material fact. Because the asserted claims fail to

meet either prong of the machine-or-transformation test as a matter of law, the claims are invalid. Accordingly, Landmark's motion for summary judgment that all asserted method claims of ST's 513 patent are invalid under 35 U.S.C. § 101 should be granted.

Dated: July 30, 2009

Respectfully submitted,

LANDMARK MEDIA ENTERPRISES, LLC

By: /s/_____

Michael R. Katchmark
(VSB No. 40440)
Conrad M. Shumadine
(VSB No. 4325)
Counsel for Defendant Landmark Media
Enterprises, LLC
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
(757) 628-5615
(757) 333-3615 Facsimile
mkatchmark@wilsav.com
cshumadine@wilsav.com

Steven J. Rocci
Gary H. Levin
Lynn B. Morreale
Stuart A. Schanbacher
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
(215) 568-3100
(215) 568-3439 Facsimile
rocci@woodcock.com
levin@woodcock.com
morreale@woodcock.com
sschanbacher@woodcock.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alan D. Albert
VSB No. 25142
LeClair Ryan, PC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Phone: (757) 441-8914
Facsimile: (757) 624-3773
alan.albert@leclairryan.com

Dana J. Finberg
VSB No. 34977
LeClair Ryan, PC
44 Montgomery Street, Eighteenth Floor
San Francisco, California 94104
Phone: (415) 913-4947
Facsimile: (415) 391-8766
dana.finberg@leclairryan.com

Steven M. Bauer
Jeremy P. Oczek
Benjamin M. Stern
Proskauer Rose, LLP
One International Place -- 22nd Floor
Boston, MA 02110-2600
sbauer@proskauer.com
joczek@proskauer.com
bstern@proskauer.com

*Counsel for Plaintiff, Shopntown LLC*

To the best of my knowledge, there are no other attorneys who require service by U.S. Mail.

/s/
_____
Michael R. Katchmark
(VSB No. 40440)
Counsel for Landmark Media Enterprises, LLC
Willcox & Savage PC
1800 Bank of America Center
Norfolk, Virginia 23510
(757) 628-5615
(757) 333-3615 Facsimile
mkatchmark@wilsav.com