IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
AUG 12 2009
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**SHOPNTOWN, LLC,**

   **Plaintiff,**

v.                **CIVIL ACTION NO. 2:08cv564**

**LANDMARK MEDIA ENTERPRISES, LLC,**

   **Defendant.**

### MEMORANDUM OPINION AND ORDER

This matter stems from Shopntown, LLC's ("Plaintiff") claims against Landmark Media Enterprises, LLC ("Defendant") alleging that Defendant has infringed one patent, in violation of 35 U.S.C. § 271(a)-(c), by making, using, offering to sell, and/or selling within the United States an on-line business referral system that operates in direct accord with the language of the claims of Plaintiff's patent. The matter before the Court is the claim construction of several terms found in U.S. Patent No. 6,968,513 ("513 Patent"). Although the Court conducted a *Markman* hearing on July 13, 2009, terms included in Claim 21 and its dependant claims were not addressed. In response to the Court's directive that each party submit supplemental briefs proposing construction on the remaining terms, Defendant submitted its Memorandum in Support of its Construction on July 24, 2009 and Plaintiff submitted its Reply Memorandum on July 29, 2009. The Court, having thoroughly reviewed the parties' brief, has been requested to construe the following terms: (1) *means for the merchants to input the information into the system for viewing by the consumers on the one or more Internet web pages using a substantially*

*automated process, wherein the means for inputting the information comprises means for selecting the localized geographic areas and topical categories to list and/or display the information, and wherein the merchant has direct access to modify, add or remove the information*; (2) *means for the consumers to select at least one of the topical categories in at least one of the plurality of localized geographic areas*; (3) *means for displaying the information to the consumers based on the selected at least one of the topical categories and at least one of the plurality of localized geographic areas* [sic]; (4) *means for monitoring usage of the system*; (5) *means for providing statistics regarding the usage of the system*; (6) *means for generating revenue based on the information inputted by the merchants*; (7) *means for calculating fees based on the usage of the system*; (8) *means to limit access to the information*; (9) *means for providing extended services*; (10) and *means for the consumers to directly contact the merchants*.

## I. BACKGROUND

This case involves technology for an on-line business referral system. The '513 Patent, titled "On-Line Localized Business Referral System and Revenue Generating System," was filed in March 1999 and issued in November 2005. The '513 Patent describes a web site for directing consumers to their local merchants through a merchant category selection process. When the initial patent application was filed, the Internet was still in its infancy and certain functionality on web sites was limited. According to Plaintiffs, before the inventors filed their patent application, prior art systems employed "search engines" to search for information about a business within a geographic area. The '513 Patent describes many problems inherent in using a search engine to obtain information on goods and services in a localized geographic area. Such problems included return of voluminous results that would "take a tremendous amount of time" to review.

2

Plaintiff explained that using search engines made it difficult for merchants to effectively target their advertising and other materials to consumers interested in certain services in a specific geographic area. Finally, Plaintiff noted that there was no central database for organizing the merchant information relating to goods and services within a specific geographic location and no way for consumers to efficiently and reliably locate such merchant information.

The '513 Patent sought to solve the problems of the prior art through systems and methods that: (1) organize Internet information from merchants into geographical and topical categories and (2) allow consumers to search for, and view, such information by selecting the geography and topical category they want. As proposed in the '513 Patent, merchants may create and post web listings of the goods or services that they provide according to the localized geographic areas where those merchants want exposure. Additionally, consumers may visit the web site and locate only those merchants that listed their goods and services in the consumer's chosen geographic area. Users of the systems and methods claimed and disclosed in the '513 Patent initially select a geographic area of interest. Once the geographic area is selected, the user is directed toward a second web page that is specific for that selected geographic area. Such a web page would contain information of goods and services offered by merchants or other users in that geographic area. The Patent also offers that the second web page may link to other web pages containing information created and posted by the merchants. Finally, the merchants incur charges based on the information that they put on the web site.

Plaintiff asserts that Defendant has infringed on twenty-five (25) of the '513 Patent's fifty-five (55) claims.[1] The Court, having previously construed independent Claim 40 and its

---

[1] The Court's previous opinion counted eighteen (18) claims as allegedly infringed. The corrected/revised count includes Independent Claims 21 and 40 and Dependent Claims: 22, 25-31, 33, 34, 37-39, 41-44, and 47-52.

3

dependent claims, now construes six (6) terms related to Claim 21 and four (4) terms from its dependant claims.[2] Language in all five (5) of the claims discussed in this Memorandum Opinion and Order–claims 21, 25, 26, 29, and 33–is disputed. Dependent Claim 21 provides as follows (with highlighted language for construction):

> An on-line, interactive web site information system for increasing access to localized businesses and markets, the system allowing information to be inputted by merchants and other users and accessed by consumers based on selected localized geographic areas and topical categories, the system comprising:
>
> one or more Internet web pages having information organized into a hierarchy of geographic areas that allows the merchants and consumers to select from a plurality of topical categories in a plurality of localized geographic areas to input or view localized information, wherein merchants in the localized geographic areas may direct the information to localized markets so as to provide greater exposure to the merchants within the localized geographic areas;
>
> a web server for displaying the one or more Internet web pages;
>
> *means for the merchants to input the information into the system for viewing by the consumers on the one or more Internet web pages using a substantially automated process, wherein the means for inputting the information comprises means for selecting the localized geographic areas and topical categories to list and/or display the information, and wherein the merchant has direct access to modify, add or remove the information;*
>
> *means for the consumer to select at least one of the topical categories in at least one of the plurality of localized geographic areas;*
>
> *means for displaying the information to the consumers based on the selected at least one of the topical categories in the at least one of the plurality of localized geographic areas* [sic];
>
> *means for monitoring usage of the system;*
>
> *means for providing statistics regarding the usage of the system;* and

---

[2] As established in the Court's July 22, 2009, Memorandum Opinion and Order, seven (7) of the terms construed for Claim 40 also apply to Claim 21.

4

*means for generating revenue based on the information inputted by the merchants.*

Dependent Claim 25 reads:

The system of claim 21 which further comprises *means for calculating fees based on the usage of the system.*

Dependent Claim 26 reads:

The system of claim 21 which further comprises *means to limit access to the information.*

Dependent Claim 29 reads:

The system of claim 21 which further comprises *means for providing extended services.*

Dependent Claim 33 reads:

The system of claim 21 which further comprises *means for the consumers to directly contact the merchants.*

## II. LEGAL STANDARD

Claim construction is "a question of law, to be determined by the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). In construing claims, the court must first look first to the intrinsic evidence in the record, i.e., the claims, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). Claim construction begins with determining how a person of ordinary skill in the art understands a claim term as of the filing date of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005), *cert denied*, 546 U.S. 1170 (2006). In the unlikely event that the intrinsic evidence is insufficient to determine the acquired meaning of the claim language, the court may rely on extrinsic evidence, i.e., dictionaries, treatises, publications, and expert testimony. *See id*; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,

1585 (Fed. Cir. 1996).

## A. Claim Language

The court's claim construction analysis must begin with the words of the claim. "[T]he words of a claim 'are generally given their ordinary and customary meaning' . . . the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics*, 90 F.3d at 1582). This ordinary meaning "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1313. If the meaning of a term is not immediately apparent, courts must look to the written description and prosecution history to provide guidance as to the meaning of the claim terms. *Id.* at 1314. In analyzing the claim language, the court must analyze the context in which the term appears and other claims of the patent to gain insight on the patentee's intention for the claim definition. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.*

## B. Specification

The specification contains a written description of the invention, the manner and process of making and using it, and the best mode contemplated by the inventor of carrying it out. *See* 35 U.S.C. § 112. "It is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitrionics*, 90 F.3d at 1582; *see Phillips*, 415 F.3d at 1315. However, there is a distinction between using the specification to analyze claim terms and incorporating limitations from the specification into the claim language. *See Phillips*, 415 F.3d at 1323; *see also Liebel-Flarsheim Co. v. Medrad*,

6

*Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004).

### C. Prosecution History

The prosecution history contains the complete record of all proceedings before the Patent and Trademark Office ("PTO"), including any express representations made by the applicant regarding the scope of the claims. The prosecution history is useful in determining how the inventor understood the patent and invention, and may provide evidence that the inventor limited the invention during the course of prosecution, thus restricting the scope of the claim language. *Phillips*, 415 F.3d at 1317. However, the court should not rely too heavily on the prosecution history because it "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, [such that] it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

### D. Extrinsic Evidence

A court may also consider extrinsic evidence, "which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317-19. However, extrinsic evidence should not be used "to contradict claim meaning that is unambiguous in the light of the intrinsic evidence." *Id.* at 1324. Judges may consult such resources to better understand the underlying technology and to aid in construing claim terms, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1322-23. Extrinsic evidence has been found to be generally less reliable than intrinsic evidence and accordingly should be considered in light of the intrinsic evidence. If analysis of the intrinsic evidence will resolve any ambiguity, it is improper to consider extrinsic evidence in determining the meaning of the claims. *Id.* at 1320.

7

## III. DISCUSSION

The parties agree that all of the remaining terms are means-plus-function terms. Claim construction of a means-plus-function limitation includes two steps. First, the court must define the particular function claimed. *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005). The construction of the function in the means-plus-function format should include any limitations contained in the claim language. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002). For each of the disputed claim terms, Plaintiff offers a proposed function that closely resembles the plain language of the claim. In contrast, Defendant does not propose any claimed functions other than recognizing the "action verb" in the term to be construed. Because there appears to be no dispute regarding the functions of the claimed terms, the Court will define each function using the plain language of the claim.

Second, after the claimed function is identified, the court must determine the corresponding structure in the written description that performs that function. *JVW Enters.*, 424 F.3d at 1330. In order to qualify as corresponding, the structure must not only perform the claimed function, but "must clearly associate the structure with performance of the function." *Cardiac Pacemakers*, 296 F.3d at 1113. The parties' arguments with respect to the structure of the remaining terms largely track the arguments addressed in the Court's July 22, 2009 Memorandum Opinion and Order ("July 22 Opinion"). Because the parties' arguments are limited to the structure of the system claims, the Court's discussion below focuses solely on the corresponding structure.

**A. Claim Construction:** *means for the merchants to input the information into the system . . . wherein the means for inputting the information comprises means for selecting . . .* AND *means for the consumers to select . . .*

The primary source of the parties' disagreement regarding several of the means-plus-

8

functions claims is whether the corresponding structure consists of a server, as Plaintiff suggests, or a personal computer ("PC") operating a web browser communicating with the server, as Defendant offers.

Regarding Claim 21, the parties again disagree over the proposed structure to carry out the claimed functions. Plaintiff asserts that the required structure is a server which allows certain functions and capabilities. Plaintiff argues that Defendant's proposed constructions read in unnecessary structure, are inconsistent, and should be rejected. (Pl.'s Reply Mem. 6.) Plaintiff further argues the '513 Patent is permissive and does not limit the ways a user can access a web page or edit and update information. (*Id.*) Defendant counters that Plaintiff's construction fails to include structure needed to input information into the system, namely a PC that is web browser equipped. (Def.'s Mem. Support 15.) Defendant also states that because a web server cannot do the inputting, a merchant PC in connection with the web server is required. (*Id.*) Defendant further argues that, instead on focusing on what is necessary and unnecessary, the Court should inquire into what the specification discloses by clear linking language. (*Id.*)

Defendant refers to Plaintiff's description and explanation of PCs, routers, and web browsers. However, what Defendant fails to acknowledge is that this technology is introduced in "Descriptions of Related Art" and is not claimed as part of the invention. (*See* Joint App. A76) Further, Defendant continues to view the corresponding structure from the point of view of the user rather than from the interactive on-line system point of view. When reading the specification and claim language from the system point of view, it is clear that the only structure required is a server that allows certain interactive capabilities.

In its July 22, 2009 Opinion, the Court said that "there is a distinction between construing a claim in light of the specification and inserting a limitation into the claim based on preferred

9

embodiments. *Phillips*, 415 F.3d at 1323. The Court cannot find that the corresponding structure that enables the merchant to access the web page includes the mandatory internet equipment and hardware itemized by Defendant, nor is such breakdown necessary to reasonably interpret the claim." After reviewing the arguments, claim language and specification again, the Court comes to the same conclusion regarding the components of the corresponding structure here.

Accordingly, the Court **FINDS** that the corresponding structure for *means for the merchants to input the information into the system for viewing by the consumers on the one or more Internet web pages using a substantially automated process, wherein the means for inputting the information comprises means for selecting the localized geographic areas and topical categories to list and/or display the information, and wherein the merchant has direct access to modify, add or remove the information* is "a server programmed for a merchant to input information and select localized geographic areas and topical categories and is accessible by or connected to the Internet." Additionally, the corresponding structure for *means for the consumers to select at least one of the topical categories in at least one of the plurality of localized geographic areas* is "a server programmed for a consumer to select a topical category in a localized geographic area and is accessible by or connected to the Internet."

**B. Claim Construction:** *means for displaying the information . . .*

The term *means for displaying the information to the consumers based on the selected at least one of the topical categories in the at least one of the plurality of localized geographic areas* [sic] appears in Claim 21 of the '513 Patent. Here, the parties again disagree over whether *displaying* requires a computer. Plaintiff asserts that its structure is more closely aligned with the language of the Patent and the Court's July 22 Opinion. (Pl.'s Reply Mem. 10.) Plaintiff also

argues that Defendant's construction reads out a claim limitation and does not account for the requirement that the information displayed is based on selections made by the consumer. (Pl.'s Reply Mem. 11.) Defendant states that nothing can be displayed to the consumer unless he has a PC at his end. Defendant further states that if *displaying* means showing on a user's computer screen, as the parties stipulated, then a PC is required to do this. Defendant concludes that Plaintiff's proposed construction omits any structure that would enable the consumer to be shown the information. (*Id.*)

In describing how the web page is displayed and accessible to the users, the specification describes one or more servers for linking users to the web sites. (Joint App. A81, 11:10-16.) Therefore, the use of a PC or other equipment supplied by the user is not part of the corresponding structure. Accordingly, the Court **FINDS** that the corresponding structure for *means for displaying the information to the consumers based on the selected at least one of the topical categories in the at least one of the plurality of localized geographic areas* is "a server programmed to display information to a consumer based on the selected topical category and localized geographic area and is accessible by or connected to the Internet."

**C. Claim Construction:** *means for monitoring usage of the system; means for providing statistics regarding the usage of the system; means for generating revenue based on the information inputted by the merchants; means for calculating fees based on the usage of the system; means to limit access to the information;* and *means for providing extended services*

The Court finds it appropriate to address six above-listed terms found in Claims 21, 25, 26, and 29 together, as the parties' proposed constructions and arguments in support thereof for these six terms are related. In their arguments, the parties address two primary differences in the proposed constructions: (1) the use of "web server programmed" versus "server programmed" and (2) the use of equivalency language. Additionally, the parties disagree over the terminology

11

related to *generating revenue, calculating fees*, and *limiting access*.

For these six terms, Plaintiff offers the structure to be "a server" whereas Defendant offers the structure as "a web server." Plaintiff asserts that, although there is no difference between "server programmed" and "web server programmed," the Court should not include the word "web" because the additional language adds a limitation. (Pl.'s Reply Mem. 12.) Defendant does not present an argument regarding this particular language but agrees that the proposed constructions are nearly identical. (Def.'s Mem. Supp. 20.) The Court agrees with Plaintiff that the difference between "web server" and "server" is insignificant.[3] The Court also notes that the "server" language is consistent with the Court's construction in its July 22 Opinion. Accordingly, the Court finds no justification for including the additional verbiage that the "server" is a "web server."

The parties also disagree about Plaintiff's proposed equivalency verbiage. Plaintiff argues that its proposed language, "and [the] equivalents of the structure thereof" may properly be included. In support of its argument, Plaintiff cites the recent constructions recited in *Epicrealm Licensing, LLC v. Autoflex Leasing, Inc.*, 2006 WL 3099603 (E.D. Tex. Oct. 30, 2006), which included "equivalents thereof" language when construing terms for patented technology related web sites. (Pl.'s Reply Mem. 13.) In contrast, Defendant states that the "equivalents thereof" language is inappropriate and unnecessary, as equivalency is an infringement concept, not a claim construction concept. (Def.'s Mem. Supp. 20.) The Court finds that the equivalency verbiage Plaintiff proposes is unnecessary surplusage.[4] Therefore, the Court will not include such

---

[3] The Court also finds that the difference between "a server programmed" and "a server which hosts one or more web pages" is negligible with regard to the instant claims.

[4] Regardless of whether the Court includes "equivalents of the structure thereof" in its construction, means-plus-function claim limitations are "construed to cover the corresponding structure . . . and the equivalents thereof." 35 U.S.C. §112, ¶ 6.

12

equivalency language in the constructions.

Accordingly, the Court **FINDS** that the corresponding structure for *means for monitoring usage of the system* is "a server programmed to track usage of the system." The corresponding structure for *means for providing statistics regarding the usage of the system* is "a server programmed to provide statistics regarding the usage of the system." The corresponding structure for *means for providing extended services* is "a server programmed to provide additional services beyond referring a consumer to one or merchants or other users."

Finally, the parties disagree on specific terminology related to three terms in Claims 21, 25, and 26. The parties first offer differing constructions regarding the term in Claim 21 discussing *generating revenue*. Plaintiff argues that Defendant reads out the type of information involved in the revenue generation and does not incorporate the concept that payment is based on the information input by merchants and that Defendant's construction is at odds with the language of the specification. (Pl.'s Reply Mem. 13-14.) Plaintiff also argues that its construction captures the concept of the system charging fees based on information the merchant input. (Pl.'s Reply Mem. 14.) Defendant claims, however, that Plaintiff's construction repeats the words of the claim and does not illuminate the meaning of generating revenue. (Def.'s Mem. Supp. 20.) In addition, Defendant refers to Joint Appendix Figure 25 and claims that to the extent there is a structure, such structure "provides payment terms." (*Id.*; Joint App. A39.) The Court finds both parties' proposed constructions inaccurate. The figure to which Defendant refers does not reference or suggest that the web pages *generate revenue* by providing payment terms. Additionally, Plaintiff's mere repetition of the claim wording is insufficient in light of the Court's July 22 Opinion. In its earlier order, the Court noted that the parties agreed that *generating revenue* means "charging fees." Thus, the term in Claim 21 carries the same construction. Accordingly,

13

the Court **FINDS** that the corresponding structure for *means for generating revenue based on the information inputted by the merchants* is "a server programmed to charge fees based on information input by the merchant."

The parties next disagree over the construction of *calculating fees* in Claim 25. Plaintiff's proposed construction offers the plain language of the term without any further definition. In contrast, Defendant's construction replaces *calculate fees* with "provide fees." Defendant, however, does not offer any justification for replacing *calculate* with "provide." Without any support, the Court cannot adopt Defendant's proposal and will not redefine or insert unnecessary limitations into this term. Accordingly, the Court **FINDS** that the corresponding structure for *means for calculating fees based on the usage of the system* is "a server programmed to calculate fees based on the usage of the system."

The parties disagree over the *limit access* language in Claim 26. Defendant asserts that access is limited by requiring the merchant to "input unique data to access the information." (Def.'s Mem. Supp. 22.). Defendant argues that its construction is simpler and truer to the specification and language of the claim. (*Id.*) Defendant also argues that Plaintiff's proposed construction includes an unwarranted limitation from the specification and conflicts with Claim 27.[5] (*Id.*) In response, Plaintiff asserts that access is limited "by requiring a user to be authenticated." Plaintiff offers that its construction parallels the Court's July 22 Opinion requiring the user to be authenticated. (Pl.'s Reply Mem. 16.) Plaintiff further argues that "unique data" is not necessary for limited access and that "authentication" is sufficient.

The Court does not identify a distinguishable difference between "a password required to

---

[5] Claim 27 reads: The system of claim 26 wherein the limiting means comprises a password required to access the information.

14

access the information" as included in Claim 27 and Defendant's proposal of "input[ting] unique data." The Court finds that the construction Defendant proposes overlaps with the plain meaning of Claim 27 and is therefore inappropriate. Moreover, the Court does not find it appropriate to define how access to such information is limited, as the plain language in Claim 26 merely states *limiting access*. It is in Claim 27 and other claims that establish how such access is limited is further explained and defined. If the Court were to include the "unique data" verbiage proposed by Defendants or the user authentication verbiage Plaintiff has offered, the Court would be including a limitation that is not supported by the specification or claim language.

Accordingly, the Court **FINDS** that the corresponding structure for *means to limit access to the information* is "a server programmed to limit access to the information."

**D. Claim Construction:** *means for consumers to directly contact the merchants*

The term *means for the consumers to directly contact the merchants* appears in Claim 33 of the '513 Patent. The parties disagree over the structure associated with the direct contact between the consumers and the merchants. Plaintiff argues that the structure allows "consumers to directly contact merchants" whereas Defendant argues that the structure allows "access [to] web pages containing merchant contact information." Plaintiff relies on the invention's reference to a substantially automated system adapted to permit users to contact merchants directly through the system. (Pl.'s Reply Mem. 17.) Plaintiff also states that this automated system is the means through which such direct contact takes place. (Pl.'s Reply Mem. 18.) In contrast, Defendant argues that in order to allow such communication, there is a required structure at the consumer end. Defendant further argues that, because the specification discusses hyperlinks and other types of information that the merchant can post so consumers can contact them, such contact must occur

15

through the website rather than directly. (*Id.*)

The Court finds that a proper interpretation of the claim does not require the Court to focus on what structure the consumer would use to communicate with the merchant. Instead, the patent must provide a server programmed to allow the consumer, using technology of the consumer's choice, to communicate directly with the merchant.

Accordingly, the Court **FINDS** that the corresponding structure for *means for the consumers to directly contact the merchants* is "a server programmed for consumers to directly contact merchants and is accessible by or connected to the Internet."

## IV. CONCLUSION

For the foregoing reasons, the Court **FINDS** that the terms in the '513 Patent are defined as follows: *means for the merchants to input the information into the system for viewing by the consumers on the one or more Internet web pages using a substantially automated process, wherein the means for inputting the information comprises means for selecting the localized geographic areas and topical categories to list and/or display the information, and wherein the merchant has direct access to modify, add or remove the information* is a means-plus-function term, with the functions being "enabling the merchant to input information into the system for viewing by consumers on one or more web pages" and "enabling the merchants to select localized geographic areas and topical categories to list and/or display the information, and where the merchant has direct access to modify, add or remove the information." The corresponding structure is "a server programmed for a merchant to input information and select localized geographic areas and topical categories and is accessible by or connected to the Internet." *Means for the consumers to select at least one of the topical categories in at least one of the plurality of localized geographic areas* is a means-plus-function term, with the function being "enabling

16

the consumer to select at least one of the topical categories in at least one of the localized geographic areas" and the structure being "a server programmed for a consumer to select a topical category in a localized geographic area and is accessible by or connected to the Internet." ***Means for displaying the information to the consumers based on the selected at least one of the topical categories in the at least one of the plurality of localized geographic areas*** [sic] is a means-plus-function term, with the function being "enabling the display of information to a consumer accessing the one or more web pages, based on the selected topical category and localized geographic area" and the structure being "a server programmed to display information to a consumer based on the selected topical category and localized geographic area and is accessible by or connected to the Internet." ***Means for monitoring usage of the system*** is a means-plus-function term, with the function being "monitoring usage of the system" and the structure being "a server programmed to track usage of the system." ***Means for providing statistics regarding the usage of the system*** is a means-plus-function term, with the function being "providing statistics regarding the usage of the system" and the structure being "a server programmed to provide statistics regarding the usage of the system." ***Means for generating revenue based on the information inputted by the merchants*** is a means-plus-function term, with the function being "charging fees based on the information inputted by the merchants" and the structure being "a server programmed to charge fees based on information inputted by the merchant." ***Means for calculating fees based on the usage of the system*** is a means-plus-function term, with the function being "calculating fees based on the usage of the system" and the structure being "a server programmed to calculate fees based on the usage of the system." ***Means to limit access to the information*** is a means-plus-function term, with the function being "limiting access to the information" and the structure being "a server programmed to limit access to the information by

17

requiring a user to be authenticated." ***Means for providing extended services*** is a means-plus-function term, with the function being "providing extended services" and the structure being "a server programmed to provide additional services beyond referring a consumer to one or more merchants or other users." ***Means for the consumers to directly contact the merchants*** is a means-plus-function term, with the function being "enabling consumers to directly contact merchants" and the structure being "a server programmed for consumers to directly contact merchants."

    The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to counsel for the parties.

    **IT IS SO ORDERED.**

Raymond A. Jackson<br>
United States District Judge

Norfolk, Virginia
August /2, 2009