# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (NORFOLK DIVISION)

| | |
|---|---|
| SHOPNTOWN, LLC | ) |
| | ) |
| Plaintiff, | )        Civil Action No. |
| | )        2:08-cv-00564-RAJ-JEB |
| v. | ) |
| | ) |
| LANDMARK MEDIA ENTERPRISES, LLC | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## REPLY MEMORANDUM IN SUPPORT OF
## LANDMARK'S OMNIBUS MOTION FOR SUMMARY JUDGMENT

ShopNTown cannot deny, and has not challenged, the existence of the multiple prior art websites; it cannot deny that these websites have the functionality described in sworn testimony corroborated by supporting documentation; and it cannot deny the teachings of the Sotiroff and Taylor patents. Given the sheer volume of prior art teaching the exact ideas claimed in the 513 patent, common sense mandates disposal of this matter via summary judgment.[1]

Lacking a legitimate defense to the overwhelming prior art, ShopNTown tries a Hail Mary pass – arguing that summary judgment should be denied simply because Landmark did not present "expert" testimony on what is an inescapable conclusion – that the asserted claims are anticipated and obvious. But ShopNTown is no Doug Flutie and, as with most Hail Marys, the attempt fails. Expert testimony is ***not*** required for summary judgment of invalidity (particularly where the technology is as simple and straightforward as here). Moreover, Landmark submitted

---

[1] Exhs. 1-2 here are charts highlighting what this prior art teaches and where the evidentiary support can be found. Tables of Contents and Authorities are attached as Exhs. 3-4, respectively.

detailed, corroborated declarations from artisans intimately familiar with the prior art websites and how they operated. ShopNTown has offered **no** counter testimony, expert or otherwise.

ShopNTown's assertion that expert testimony is required, beyond being legally wrong, insults common sense, since the factual record of prior art clearly shows every element of the asserted claims.[2] It is not rocket science to understand, for example, that each of www.yachtworld.com, www.traderonline.com, and www.cweb.com "display[ed] the merchant information in response to the geographic area and topical category selected by the consumer," and met every other claim element as well. ShopNTown's "invention" is nothing more than an intuitively obvious way of setting up a Yellow Pages on the Internet. Anyone (skilled in the art or not) would organize a business directory site by geography and by topic – just as the various Yellow Pages books do – since it takes no expert training, in anything, to realize that those using the site to find specific merchandise or property will have to locate the applicable merchants or the property (which is where it is). Automating such a site was an obvious desirability, not a revolutionary or patentable insight. The reason that there is so much prior art is that anyone would, and many did, instinctively set up the same system and method allegedly "invented" here.

Moreover, ShopNTown's submissions create no genuine dispute. First, its expert has admitted that **he has not reviewed the central declarations or depositions of the key fact witnesses** that establish the existence and operation of the prior art websites (Exh. 9 at 29:1-5). It is, thus, impossible for him to reliably opine about what the sites do, or do not do. Such testimony should be inadmissible, and certainly no reasonable jury could rely on it.

Indeed, Dr. Sacerdoti admitted that **he was not asked to – and did not – examine the very prior art at issue**, nor to opine on whether that art was invalidating (*id.* at 125:8-20). So, while

---

[2] Dr. Hanson's expert report, which presents the same opinions of invalidity that underlie this motion, was served July 30th. If the Court desires a copy, it will be provided.

contending that it has offered "undisputed expert testimony" about the prior art, ShopNTown actually offered no such thing.[3]  Only Landmark submitted detailed factual declarations from artisans intimately involved with the prior art websites – artisans who thoroughly explained those websites.  All that ShopNTown offers is (to quote a case ShopNTown touts) "unsubstantiated attorney argument," upon which no reasonable jury could rely.

ShopNTown studiously ignores *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) (upholding grant of summary judgment of invalidity).[4]  Indeed, the standards for proving obviousness used by ShopNTown's "expert" (*see* Opp. Exh. B.1. at ¶¶32-34) are improperly strict, outdated, and plainly wrong in view of *KSR*.  Dr. Sacerdoti even admitted that he had not read *KSR* before rendering his opinions (Exh. 9 at 65:25-66:25).  Not surprisingly then, his report – admittedly limited to commenting on Landmark's expert's report rather than on the prior art itself – ignores the precepts that patent claims can be invalidated under the "predictable result of combining known elements" or "obvious to try" standards explicitly validated by *KSR*.

The Supreme Court in *KSR* made it clear that courts are to take such common sense "functional approachs" to invalidity analyses.  Allowing patents on obvious, trivial advances serves no  useful public purpose; it impedes competitiveness and taxes the legitimate activites of legitimate companies through the cost of lawuits such as this one.

Several of the prior art websites had all the functionalities now claimed by ShopNTown.  Even *if* one website were missing a functionality recited in the asserted claims, that functionality was present in other of the websites.  There is no functionality of the claims that was not present in at least four of the prior art sites.  The notion of combining these teachings, all performing the

---

[3]  The Sacerdoti declaration (Opp. Exh. B) does include discussion concerning "drill-down" menus.  Notably, the testimony confirming that he had not examined whether or not the prior art references anticipated the asserted claims came ***after*** that declaration.
[4]  Incredibly, ShopNTown never cites to this recent, comprehensive, and binding precedent.

same kind of business methods, was nothing "more than the predictable use of prior art elements according to their established functions." *Id.* In short, it was nothing patentable.

There is nothing so complicated here that experts are needed to explain it. Incorporating a well-known functionality from one website into another website, to then have that functionality operate in the context of the second in just the way expected from its operation in the first, simply does not qualify for patent protection. At most, that is what the 513 patent does.

## I. THERE IS NO REQUIREMENT FOR EXPERT TESTIMONY OR FURTHER DECLARATION TESTIMONY WHERE, AS HERE, THE FACTS AND CLAIM CONSTRUCTION ARE ESTABLISHED

In support of its erroneous position, ShopNTown misquotes *Schumer v. Lab. Comp. Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002), and then uses the truncated quote to argue that the motion must be denied because Landmark offered no expert testimony and its fact witnesses did not compare the prior art websites to the asserted claims. (*see, e.g.,* Opp. at 2, 10). But neither the *Schumer* case – nor any case – says that. Indeed, the Supreme Court and the Federal Circuit have both upheld summary judgments of invalidity absent any mention or reliance on experts (by either the district or appellate courts). *See, e.g., Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57 (1969) (concluding that the district court's judgment of obviousness had been correct and reversing 404 F.2d 450 (4th Cir 1968)); *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983) (affirming summary judgment of invalidity; "[t]he subject matter, i.e., the scope and content, of those patents being easily discernible from their drawings and written descriptions, ***no testimony, expert or otherwise***, regarding their scope or content was necessary"; emphasis added).[5] In at least one instance, the

---

[5]   *See also SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) (affirming summary judgment of anticipation found below at 2002 U.S. Dist. LEXIS 25275 (E.D. Pa. Dec. 20, 2002)); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270 (Fed.

Federal Circuit affirmed a summary judgment of invalidity while stating that no expert testimony was required even when the teachings of the invalidating reference were only inherently (*i.e.*, not explicitly) present. *Prima Tek II, L.L..C. v. Polypap*, 412 F.3d 1284, 1290 (Fed. Cir. 2005).

ShopNTown's truncation of its quoted excerpt from *Schumer* omits the first word of the quote – "Typically" – changing its entire meaning. Schumer stands for the proposition that, *if* a party chooses to submit a declaration specifically directed to an invalidity point, that declaration "*typically*" should meet certain requirements. Thus, while it might be "typical" that there would be such a comparison *if* a declaration were submitted, it is *not* required, nor is it necessary here where: (a) the claim elements are simple; (b) the Court has already construed the claims so no help is needed there; and (c) the Court, using common sense, can apply the prior art teachings to the claim elements itself (as in Attachments A-F to Landmark's opening brief).[6]

## II. SHOPTOWN'S ALLEGED EXPERT TESTIMONY IS CONCLUSORY, UNRELIABLE, AND NOT DIRECTED TO THE ISSUE AT HAND

The Sacerdoti report deserves no consideration because *he did not analyze the prior art*:

> A. The job I was asked to do was to assess Dr. Hanson's report, was not to parallel the work that Dr. Hanson did. So, you know, I haven't studied the issue as extensively as I imagine Dr. Hanson has. So as I'm saying, I see no reason why – I see no evidence that would contradict Dr. Hanson's conclusions. I just have not seen what looks to me like a justification for his conclusion. . . . *I'm not addressing the conclusion. I'm addressing the report.*

(Exh. 9 at 125:8-20; emphasis added.)

> You know, *I haven't asked myself the question, did it teach it? I've asked myself the question, did Hanson successfully argue that it did?*

---

Cir. 1986) (as to infringement: "We have never *required* a party to proffer expert testimony on claim interpretation or on application of claim language to accused devices" (emphasis original)).

[6] *Invitrogen Corp. v. Clontech Labs.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005), does say (as quoted by ShopNTown): "Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony." But nothing in *Invitrogen* **requires** the use of experts, especially where the concepts involved are as simple as here. Any suggestion that Landmark's demonstration of the invalidity of the claims, through extensive sworn testimony and supporting documentation, is "unsubstantiated" is absurd.

(*Id.* at 149:25-150:11; emphasis added.) The Sacerdoti Report is irrelevant since the issue on the table here is exactly the one that Dr. Sacerdoti admits he ignored: Did the prior art teach the alleged invention of the asserted claims?

Moreover, the report is flawed and unreliable in any event. Incredibly, Dr. Sacerdoti admitted that, through the time of his report (and of his Opposition declaration), ***he had not even looked at any of the fact declarations*** submitted by Landmark (Schanbacher Exhs. 2, 4, 6, and 8) – declarations from men indisputably, intimately familiar with the prior art websites:

> Q. So you did not consider any such declarations in forming the opinions set forth in your expert report?
>
> A. That's correct, to the best of my recollection.

(*Id.* at 29:21-25; *see also* 27:10-29:20.) Given Dr. Sacerdoti's admission that he ignored these central, primary sources of facts about the prior art websites, his report and declaration are meaningless and should be excluded as not meeting the standards of Fed.R.Evid. 702.

But even if the Sacerdoti report is considered, its submission by non-movant ShopNTown does not *ipso facto* create a fact issue or preclude summary judgment. In *KSR*, summary judgment of invalidity was held to be proper despite a declaration from non-movant's expert:

> To the extent the [court of appeals] understood the *Graham* approach to exclude the possibility of summary judgment when an expert provides a conclusory affidavit addressing the question of obviousness, it misunderstood the role expert testimony plays in the analysis. . . . ***Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.*** Nothing in the declarations proffered by Teleflex prevented the District Court from reaching the careful conclusions underlying its order for summary judgment in this case.

*KSR*, 550 U.S. at 426-427 (emphasis added). The Sacerdoti report is likewise a red herring, offering nothing reliable or relevant. It creates no dispute about the prior art sites or their effect.

## III. THE DETAILED FACTUAL EVIDENCE FROM AUTHORITATIVE SOURCES SUBMITTED BY LANDMARK STANDS UNCONTRADICTED

Although ignored by ShopNTown's expert, Landmark submitted four factual declarations describing the prior art websites in great detail – declarations that were well-supported and corroborated by documents and historical web page print-outs.[7]

For example, from early 1997 until 2000, Robert Summers was the Webmaster of YachtWorld and responsible for the programming and development of the www.yachtworld.com website (Schanbacher Exh. 4 at ¶¶4-5). He is now YachtWorld's Director of Operations (*id.* at ¶1). His declaration lays out the features and operation of www.yachtworld.com as it existed in 1997-1999, and he discusses a significant number of corroborating documents, including various web page print-outs taken from www.Archive.org showing how the site looked and worked.[8]

Similarly, from 1996 until 1999, Tomas Gonzales was responsible for the overall design and feature set of the www.aptsforrent.com website (Schanbacher Exh. 2 at ¶¶6-7). His declaration (Schanbacher Exh. 2) details that website as it existed in 1996, years before the applications for the 513 patent. He, too, refers to a variety of corroborating documents, including various web page print-outs showing how the site looked and worked.

Allen McGrath was the Webmaster responsible for programming and development of the www.traderonline.com website from 1996 until 1999 (Schanbacher Exh. 6 at ¶¶2-3). He describes the site and discusses a large number of corroborating documents, including various

---

[7]    ShopNTown erroneously asserts that Landmark's fact declarations are "in large part uncorroborated" (*see, e.g.,* Opp. at 9, 15). But even a cursory review makes clear that those declarations are well-supported by documentation and historical webpage print-outs, just the type of evidence that "provides the most reliable proof that the... testimony has been corroborated." *Sandt Technology v. Resco Metal & Plastics*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001).

[8]    The parties have agreed that printouts of web pages found on the www.archive.org website will be treated as true copies of the web pages of the respective underlying sites as they would have been presented by a user's web browser (with the exception of certain missing graphics and functionality) on the dates specified in the footer of the printout (Exh. 10).

webpage print-outs. Those documents show that Mr. McGrath actually wrote portions of the source code for the site, graphically corroborating his declaration statements (*see, e.g., id*. at ¶8).

Finally, Michael Alston was the general manager for the Internet activities of the newspaper that developed the www.cweb.com website in 1995, and was intimately involved in that initial development effort (Schanbacher Exh. 8 at ¶¶2-4). He continued to be very familiar with that site's features and functionality at least through 1998 (*id*. at ¶¶9-10). His declaration details the operation of the site during these times, and he discusses a range of corroborating documents, including web page print-outs showing how the site looked and worked.

The stories of the prior art websites, as reflected in the declarations and documents, are undeniable. They compellingly demonstrate that nothing now claimed by ShopNTown was new and unobvious. ShopNTown, offers no substantive, factual rebuttal.

## IV.   NONE OF SHOPNTOWN'S ALLEGED "DISPUTES" CONCERN THE FACTS OF THE PRIOR ART OR CREATE A GENUINE DISPUTE

ShopNTown's manufactured "disputes" as to the teachings of the  art amount to nothing more than mud thrown at a wall. Manufacturing far-fetched claim constructions, reading phantom limitations into claims, mis-reading testimony, and wrongly asserting that undisputed evidence is uncorroborated can not substitute for real evidence creating a genuine factual dispute. ShopNTown has no such evidence and summary judgment is fully appropriate.

What ShopNTown is asking the Court to do is to ignore the prior art and to ignore what one skilled in the art would have done in light of the knowledge that was available, and instead conduct a week and one-half or longer jury trial where ShopNTown will attempt to convince the jury that, in spite of the fact that everyone was doing what this patent teaches, ShopNTown invented something that entitles it to damages. The volume and scope of the prior art illuminates and conclusively establishes that what was allegedly "invented" here was already in practice, and

further was intuitively obvious.  The volume of the prior art is not a reflection of there being so much genius; it is a reflection that common sense existed prior to the patent and it was utilized.

Because, as is usually the case, it takes longer to "debunk" bare assertions than it does to make them, the extraordinary volume of the prior art makes it impossible to discuss in this brief every example of the prior art allegedly disputed by ShopNTown.  Instead, Landmark will specifically address ShopNTown's contentions as to only two of the six invalidating references – www.yachtworld.com and the Taylor patent.  While the other four references are just as invalidating, these two are the ones as to which ShopNTown has chosen to make the least noise. Landmark's detailed gutting of ShopNTown's misguided and unsupported assertions as to the remaining four references can be found in Exhibits 5-8 attached hereto.

### A.   ShopNTown Raises No Genuine Dispute That The YachtWorld Site Anticipates And/Or Renders Obvious All Of The Asserted Claims

ShopNTown alleges disputes as to only three elements in independent claim 21 and two in independent claim 40.  It does *not* dispute that the YachtWorld website teaches the elements of dependent claims 22, 26-27, 29, 31, 33, 38, 41-42, 44, 47-48, and 52.  Thus, if claims 21 and 40 are anticipated, ShopNTown has conceded that these claims are anticipated.

**Independent Claims 21 and 40:** ShopNTown's argument that www.yachtworld.com did not organize its information into a "hierarchy of geographic areas" (Opp. at 16) is *not* a fact dispute, but rather a legal contention on claim construction.  The Court construed "information organized into a hierarchy of geographic areas" as "information organized into *geographic areas organized into tiers*" (D.I. 90 at 7), but ShopNTown now tries to read in another limitation.

As illustrated by a sample search page from the site, users were able to search for boats in the YachtWorld database geographically by "Country," "State," and/or "City."  Thus, the information of the site was organized into a hierarchy of geographic areas, with "Country" as the

first tier, "State" as the second tier, and "City" as the third tier.  For example, if a user selected "Canada" from the "Country" menu, the search would return boat listings for Canada; if the user entered "Virginia" in the "State" field, the search would return boat listings for Virginia, and if the user entered a particular city in the "City" field, the search would return listings for that city.



(Schanbacher Exh. 4 at INTARCHIVE689.)

ShopNTown argues that information is not organized into a "hierarchy of geographic areas" unless the selection at one tier of the hierarchy *constrains* the choices at the next tier, asserting that the YachtWorld site does not do this.  Nowhere, however, does the claim language or the Court's construction impose such a requirement.  In reality, it is common sense that, if information is arranged so that you can select information by Country, *or* by State, *or* by City, the geographic information is "organized into tiers."  That is all that is required.[9]

Even if "hierarchy of geographic areas" did require that a selection at one tier constrain choices at the next, ShopNTown does not dispute that such a "hierarchy" was taught by both the prior art www.aptsforrent.com website and the Sotiroff patent.  In www.aptsforrent.com (the

---

[9]  ShopNTown's own actions belie its contentions and demonstrates its desperation.  It originally proposed a narrow construction – "a set of geographical areas organized into levels of a hierarchy, for specification by the user," but later changed to the broader "organized into tiers" language (Exh. 11).  ShopNTown is now barred from arguing for the narrower construction.

predecessor to the accused www.forrent.com website), users first selected a State, and then were presented with a list of cities within that State that was constrained by the user's selection of the State. After selecting a city, the user was presented on a next page with a list of neighborhoods or areas within that city; choices constrained by the city selection. The user could select a particular area within the city, or could select "all areas" within the city, *i.e.,* the entire city.



Similarly, in the Sotiroff system, a user is able to select a State by clicking on a map of the United States. After selecting a State, the user is presented with a State map from which particular cities can be selected. After selecting a city from the State map, the user is presented with a map of the city from which further selections can be made.



Each of the www.yachtworld.com and www.aptsforrent.com websites and the system of Sotiroff enabled users to select information at different tiers of a geographic hierarchy. Although ShopNTown asserts that the YachtWorld site does not fall within this claim limitation, to the extent that there are any differences between the manner in which geographic searches are performed by these prior art sites, those differences are trivial matters of design choice. Thus, even if YachtWorld were found not to anticipate this limitation, it would have been more than obvious to modify its search function to a manner more similar to that shown in Sotiroff or www.aptsforrent.com. Mere design choice does *not* confer patentability.

The only other element of claim 40 (or analogously of clam 21) whose presence in the YachtWorld site ShopNTown disputes is "providing statistics" (Opp. at 16-17). ShopNTown does *not* challenge the fact that the website *actually* provided statistics, but instead contends, erroneously, that an additional requirement – that the statistics have to be provided *to users or merchants* – must be read into the claim. Such a limitation is nowhere mentioned. This improper *legal* argument does not preclude summary judgment. Indeed, this Court has already disposed of it, construing the term "means for providing statistics regarding the usage of the system" in claim 21 to mean a "server programmed to provide statistics regarding the usage of the system" with no mention that the statistics must be provided to anyone (D.I. 110 at 13).

That is it for Claim 40. ShopNTown offers nothing more to avoid anticipation beyond these two far-fetched legal constructions. The Court can, and should, dismiss them.

As to Claim 21, ShopNTown offers one additional contention[10] – that the YachtWorld site did not teach "means for generating revenue based on the information inputted by the merchants," which this Court has construed to mean "a server programmed to charge fees based

---

[10]     ShopNTown makes *no* similar argument as to the analogous elements of claims 40 or 41.

on the information inputted by the merchant." Again, ShopNTown does **not** actually dispute that the YachtWorld website did generate revenue based on merchants' use of the site. Rather, ShopNTown again wrongly seeks to read an additional limitation into the claim – a requirement that users be able to pay on-line (Opp. at 17). This re-cast of "charging fees" into a requirement of "paying fees on-line" is legally erroneous; it does not bar the grant of summary judgment.

In sum, ShopNTown does not actually dispute that the YachtWorld site contained each and every element of claims 21-22, 26-27, 29, 31, 33, 38, 40-42, 44, 47-48, or 52. ShopNTown's legal contortions aside, the claims are undisputedly anticipated.

**Dependent claims 25, 37, 39, and 50-51**: ShopNTown's alleged disputes as to these claims are just as easily de-bunked. For example, the "dispute" as to claim 25 is the same raised as to claim 21's "charging fees" limitation and fails for the same reasons already discussed.

ShopNTown's only challenge to the anticipation of claims 37 and 50 (Opp. at 17) is that the factual testimony, provided by the very person responsible for the programming and development of the www.yachtworld.com site, is "uncorroborated." This, of course, is not true, as Mr. Summers' testimony is backed up by a wealth of independent documentary evidence as attached to his declaration (*see, e.g.,* Schanbacher Exh. 4 at ¶¶14 and 23, YW0000045, YW0000274 and YW0000335). There is no genuine dispute here.

Finally, ShopNTown argues that claims 39 and 51 are not anticipated, alleging that those claims **legally** require **two separate** "drill-down menus," conceding that the YachtWorld site had only one such menu (Opp. at 17). But "drill-down menus" are defined as "one or more choices presented in a menu after selecting a choice in a hierarchical menu." (D.I. 90 at 8). The claims only require that both geographic areas and topical categories be presented in a drill-down menu, **not** that they be presented in **separate** menus. On the YachtWorld website, **both** the choices for

geographic area and for topical categories *are* presented in a menu after selecting a choice in a hierarchical menu (*see* opening brief Attachment B pp.6-7 and evidence cited there).

Even if the claim had been construed (it was not) to require two separate "drill-down menus," the presentation of choices to a user – as a drill-down menu, drop-down menu, list, or some other manner – is simply a matter of design choice. As stated in *KSR*, 550 U.S. at 713:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

Even ShopNTown concedes that YachtWorld presented at least one drill-down menu, so it would be no inventive leap at all to add another one. Thus, even if claims 37 and 50 were not anticipated because YachtWorld provided only one drill-down menu, common sense suggests that providing another one would have been obvious to the artisan (or to anyone at all).

**B.     ShopNTown Raises No Genuine Dispute As To The Fact That The Taylor Patent Renders All Of The Asserted Claims Obvious**

ShopNTown disputes the presence in the Taylor patent of only one claim element in each of independent claims 21 and 40 (Landmark conceded two others, that would have been obvious to add.) By *not* disputing that Taylor teaches the added elements of claims 26-27, 33, 37, 39, 44, 48, and 51, ShopNTown concedes that these claims are invalid if claims 21 and 40 are invalid.

**Independent Claims 21 and 40:** As it does with the other websites, ShopNTown makes the *legal* argument that Taylor does not disclose "information organized into a hierarchy of geographic areas" because choices at one tier of the hierarchy are not constrained by a choice at a preceding tier. As already discussed in detail, neither the words of the claim nor the Court's construction requires such a constraint. Like the YachtWorld, TraderOnline and CWeb websites, Taylor discloses that information (job listings) "may be organized by geographic location with

any desired amount of specificity" (Schanbacher Exh. 10 at col. 3, ll.49-51). For example, "[f]or a nationwide job indexing system, it may be convenient to specify location by region *or* state," and "[f]or local applications, it may be more appropriate to specify location by county, city/town *or* neighborhood" (*id.* at col. 3, ll.52-55; emphasis added). Thus, Taylor teaches organizing information by geographic hierarchy: region --> state --> county --> city/town --> neighborhood.

Despite overwhelming, and unrebutted, evidence to the contrary, ShopNTown also feebly argues that the only limitations of claims 21 and 40 that are missing from Taylor – "monitoring usage of the system" and "providing statistics regarding the usage" – would not have been obvious. Incredibly, and in an apparent attempt to argue non-obviousness based on lack of need, ShopNTown's expert Dr. Sacerdoti states that such features would not have been valued by employers who post jobs on employment sites (Opp. Exh. B.1. at ¶198). Yet, as shown on the CWeb page provided with Landmark's opening brief, CWeb actually touts to employers that its Account Manager feature provides "the number of job seekers who read your listing" (Schanbacher Exh. 8 at INTARCHIVE338 – response to question 12). Dr. Sacerdoti's opinion is irrelevant given the actual presence of this functionality in one of the prior art sites.

When pressed on deposition, Dr. Sacerdoti did admit that CWeb would have at least suggested use of these features to one of ordinary skill (Exh. 9 at 147:12-149:19). He also admits in his declaration that one of ordinary skill would have found such features "trivial . . . or easy" to implement (Opp. Exh. B at ¶16). With such a clear teaching or suggestion from CWeb of monitoring usage and providing statistics in the very same kind of website (employment listings) as that described in Taylor, and with the Sacerdoti admission that such features would have been "trivial ... or easy" to implement, the only conclusion to be drawn is that those features would have been obvious to that skilled artisan. It is hard to imagine a clearer case.

**Dependent claims:** ShopNTown also alleges disputes as to: (a) extended services (claims 29 and 42); and (b) drill-down menus (claims 37 and 50), again merely citing to the Sacerdoti report, which is inadequate for reasons already discussed. These items *are* disclosed in Taylor (*see* attachments to Landmark's opening brief). Even if they were not, they are of such a comparatively trivial nature, and were so well-known at the time, that making use of them in combination with the system or method of the independent claims would have no more than the "predictable combination of old elements" that the Supreme Court deems unworthy of a patent.

## V. THE ALLEGED EVIDENCE OF SECONDARY CONSIDERATIONS DOES NOT CREATE A GENUINE DISPUTE AS TO OBVIOUSNESS

With no genuine rebuttal to the voluminous prior art, ShopNTown alleges that so-called "secondary considerations" trump those clear teachings of obviousness (Opp. at 24-26). Its argument – unsupported and frankly absurd – cannot save its patent. They are called "secondary" for a reason. Where, as here, there is "such a strong prima facie case of obviousness," it cannot be overcome by these secondary factors. *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008) (reversing denial of JMOL as to obviousness and finding patent invalid despite jury findings of non-obviousness). Because the prior art is simple to understand and easily applied to the asserted claims to show their obviousness, any secondary considerations *do not alter the analysis.* "[O]bjective considerations of nonobviousness... including substantial evidence of commercial success, praise, and long-felt need, [are] inadequate to overcome a strong showing of primary considerations that render[] the claims at issue invalid." *Id.*, (citing *Leapfrog Enterprises v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007)).

The contention that there was a "long-felt" need for a system as already described in the Sotiroff patent but that could also generate revenue is ridiculous. As shown by the other art, websites *did* generate revenue, and that aspect would have been a natural and easy inclusion into

the Sotiroff system.  (Indeed, the Internet has been successful largely *because* it is a perfect place to generate revenue efficiently.)  To say that "some in the field" discouraged charging fees ignores that others enthusiastically did charge.  Perhaps most non-sensical is the allegation (unsupported by any factual evidence) that, because many businesses including Landmark have been successful in using the Internet, this somehow proves that ShopNTown had an invention.  This is laughable.  It assumes that no Internet business would be successful but for the ShopNTown "invention," which of course is beyond absurd.  Before ShopNTown can make such a contention even specific to Landmark, it has to prove that: (a) Landmark's site actually uses the claimed invention; and (b) its success resulted from that invention rather than from myriad other factors such as marketing, efficiency, other website features, etc. that pre-date the 513 patent by years, as well as Landmark's 350 sales representatives.  This cannot be shown.

## VI.  SHOPNTOWN ADMITS ALL OF THE FACTS AS TO LANDMARK'S ENTITLEMENT TO SUMMARY JUDGMENT OF NO WILLFULNESS

ShopNTown does not dispute that Landmark had no knowledge of the 513 patent before being sued, and it admits it never moved to dismiss any of Landmark's defenses or sought a preliminary injunction (*see* Opp. at 7-8).  Indeed, ShopNTown does not dispute that Landmark has presented numerous substantial, non-frivolous defenses to liability.  The sole basis argued for denying summary judgment of no willfulness is a contention that those same defenses are not "adequate" (*id.*).  That is not a fact question, and it is not relevant to resolution of the issue.

ShopNTown takes no issue with the law as stated by Landmark other than to contend that no case specifically requires that ShopNTown move to dismiss the defenses or seek an injunction.  The point is that ShopNTown's failure to seek such relief is a concession that the defenses are substantial and non-frivolous under the *Seagate* standard.  Even if ShopNTown's conclusory argument that Landmark infringes (Opp. at 30) is found to be true, it says nothing

about the legal reasonableness of Landmark's non-infringement defenses, and is irrelevant anyway since ShopNTown concedes the reasonableness of Landmark's other defenses.)

## VII.   THERE IS NO DISPUTE THAT THE CLAIMS ARE NOT ENTITLED TO THE PRIORITY DATE OF THE PROVISIONAL APPLICATION

ShopNTown's argument that the provisional application supports the claims because it "enables" their implementation is legally misplaced.  Lack of enablement is ***not*** the basis for Landmark's motion.  The 513 patent is not entitled to the priority date of the provisional application because the provisional application has no "written description" of corresponding structure for the "means for" elements in the claims.  Enablement and written description are separate and distinct requirements of 35 U.S.C § 112, ¶1, and ***both*** must be satisfied.  *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004).  Since ShopNTown addresses only enablement, the provisional application's lack of written description stands unrebutted.

The claims asserted here also implicate 35 U.S.C § 112, ¶6 through use of "means for" claim elements, so ShopNTown's entitlement to priority of the provisional application requires that the provisional contain a written description of structure that corresponds to each of those elements, such as the "connecting means."  *See*, *Blackboard, Inc. v. Desire2Learn Inc.,* 2009 U.S. App. LEXIS 16404, **28-41 (Fed. Cir. July 27, 2009).  The Court interpreted the "connecting means" to be a server, relying on the specification of the 513 patent as issued.  But the provisional does not mention, let alone describe, ***any*** server.  Not even Sacerdoti disputes this.  Since there is no description of a server (or any specialized computer) as the structure performing the connecting function in the provisional application, the claims are not entitled to its filing date.  It is irrelevant that one of ordinary skill might have been able to conceive that a server would be the connecting means.  To provide legally adequate written description to support the "connecting means" of the later-filed 513 patent, the provisional was required to

*specifically* disclose a server and to describe it as having that connecting function. Since it does not, the 513 patent is not entitled to the provisional's filing date.

## VIII. "MEANS FOR MONITORING" AND "MEANS FOR PROVIDING STATISTICS" ARE INDEFINITE AS USED IN THE ASSERTED CLAIMS

The terms "means for monitoring" and "means for providing statistics" are recited in claim 21 (and, thus, in claims that depend therefrom). As discussed above (*see also* Opening Brf. at 27-29), there is *no* structure described in the 513 patent specification for implementing these claimed functions. The Sacerdoti declaration focuses on enablement, but does not identify any structure in the specification that performs and corresponds to the functions of monitoring activity or providing statistics. There is none. The declaration merely identifies portions of the specification that discuss *what* is done, and then *speculates* as to *how* it could be done. But there are numerous ways to carry out the functions. The failure – in the specification and in the declaration as well – to identify *specific* structure performing the functions provides no baseline whatsoever for determining what is infringing and what is not. The claims are, therefore, invalid. *Id.*; *Biomedino, LLC. v. Waters Technologies Corp.*, 490 F.3d 946, 952 (Fed. Cir. 2007).

## IX. USE OF THE TERMS "ALLOWING" AND "MAY DIRECT" RENDER THE CLAIMS INDEFINITE AND, THUS, INVALID

As to the "allowing" term of claim 40 and its dependent claims, the Sacerdoti declaration (¶23) applies an incorrect legal standard to opine that infringement of a method claim occurs so long as an instrumentality that is capable of performing the method steps is provided. To the contrary, infringement of a method claim occurs *only* by *actual use*. *Joy Technologies v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). "Allowing" or enabling an action is *not* actual use, and the claim is, therefore, indefinite as to what use actually constitutes infringement.[11]

---

[11] Beware what you ask for. ShopNTown itself sought and obtained the overbroad construction that leads to indefiniteness. *Star Scientific v. R.J. Reynolds*, 537 F.3d 1357, 1371 (Fed. Cir.

Dr. Sacerdoti's declaration also does not address the "may direct" term within the web page element of claim 21 (and its dependent claims) in any way that resolves the claims' fatal problem of mixing apparatus and process limitations. *See IPXL Holdings v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Thus, the claim does not allow a determination of whether infringement occurs by the mere providing of the web pages, or requires that merchants actually "direct" their information for infringement to occur. The asserted claims are invalid.

## X.  CONCLUSION

Every asserted claim was anticipated and/or obvious in view of multiple pieces of prior art and is also invalid for failing the requirements of 35 U.S.C. § 112. There is no possibility of willful infringement and the 513 patent is not entitled to a priority date earlier than March 17, 2000. Summary judgment to this effect should be entered.

Dated: August 26, 2009

Respectfully submitted,

LANDMARK MEDIA ENTERPRISES, LLC


By: /s/_____
        Conrad M. Shumadine  (VSB No. 4325)

OF COUNSEL:                Michael R. Katchmark  (VSB No. 40440)
Steven J. Rocci               Counsel for Defendant, Landmark Media
Gary H. Levin                 Enterprises, LLC
Henrik D. Parker            WILLCOX & SAVAGE, P.C.
Lynn B. Morreale           One Commercial Place, Suite 1800
WOODCOCK WASHBURN LLP   Norfolk, Virginia  23510
Cira Centre, 12th Floor        (757) 628-5615
2929 Arch Street            (757) 333-3615 Facsimile
Philadelphia, PA  19104-2891    cshumadine@wilsav.com
(215) 568-3100            mkatchmark@wilsav.com
(215) 568-3439 Facsimile
rocci@woodcock.com
levin@woodcock.com
parker@woodcock.com

---

2008) ("if reasonable efforts at claim construction result in a definition that does not provide sufficient particularity and clarity to inform skilled artisans of the bounds of the claim, the claim is…invalid for indefiniteness").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alan D. Albert
VSB No. 25142
LeClair Ryan, PC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Phone: (757) 441-8914
Facsimile: (757) 624-3773
alan.albert@leclairryan.com

Dana J. Finberg
VSB No. 34977
LeClair Ryan, PC
44 Montgomery Street, Eighteenth Floor
San Francisco, California 94104
Phone: (415) 913-4947
Facsimile: (415) 391-8766
dana.finberg@leclairryan.com

Steven Michael Bauer
Jeremy Paul Oczek
Benjamin Michael Stern
Sharada Devarasetty
Proskauer Rose, LLP
One International Place, 22nd Floor
Boston, Massachusetts 02110-2600
Phone:  (617) 526-9700
Facsimile: (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com
bstern@proskauer.com

*Counsel for Plaintiff, ShopNTown, LLC*

/s/_____
Conrad M. Shumadine
(VSB No. 4325)
Michael R. Katchmark
(VSB No. 40440)
Counsel for Landmark Media Enterprises, LLC
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
Phone:  (757) 628-5500
Facsimile:  (757) 628-5566
cshumadine@wilsav.com
mkatchmark@wilsav.com

I-897788.1